COLONIAL TIMES, INC., d.b.a. The Daily Rag, Petitioner,

v.

Honorable Oliver GASCH, United States District Judge, Respondent.

No. 74–1349.

United States Court of Appeals, District of Columbia Circuit.

Jan. 3, 1975.

---

3. Joint Appendix, pp. 1a–3.

4. United States v. Munsingwear, 340 U.S. 36, 39–40, 71 S.Ct. 104, 107, 95 L.Ed. 36 (1950).

E. Edward Bruce and Michael D. Barnes, Washington, D. C., were on the pleadings for petitioner.

Earl J. Silbert, U. S. Atty., John A. Terry and Steven R. Schaars, Asst. U. S. Attys., were on the brief for respondent.

Before BAZELON, Chief Judge, and ROBINSON and MacKINNON, Circuit Judges.

BAZELON, Chief Judge:

Petitioner Colonial Times, Inc., publishes an "underground" newspaper in the District of Columbia known as "The Daily Rag." The December 8, 1972 edition of "The Daily Rag" displayed on its cover a sketch of an elderly woman, fully dressed, wearing a large lapel button expressing in harsh and graphic language disapproval of the District of Columbia food tax. United States Postal Service employees handling copies of this edition of "The Daily Rag" objected to the cover and as a result four copies of "The Daily Rag" were withdrawn from normal mail processing for attempted hand delivery by a Postal Service Special Investigator. The Postal Service took further action against "The Daily Rag", actions which are the subject of conflicting allegations set out in more detail below. These actions, at least as they were perceived by petitioner, led it to file a complaint in District Court, seeking injunctive relief against any further interference from the Postal Service in the regular mail processing of "The Daily Rag." After filing this complaint pe-

titioner sought to depose certain Postal Service employees by other than stenographic means, pursuant to Fed.R.Civ.P. 30(b)(4).[1] That Rule requires a party seeking depositions of this sort to obtain a court order authorizing the deposition. The District Court refused to issue such an order upon request and petitioner now moves this Court for a writ of mandamus to compel the District Court to grant the motion to take depositions by other than stenographic means. For reasons set out herein, we hold that the writ lies to review this particular refusal to enter an order permitting depositions by other than stenographic means, that the District Court has misapprehended the purpose of Rule 30(b)(4) and that the District Court should comply with the holdings of this opinion.

The factual disputes relevant to the purpose of the proposed depositions may be briefly stated. Petitioner alleges that in the course of hand delivery of the four copies of the December 8 edition, mentioned above, the USPS agent stated that the newspaper was obscene, advised the subscribers to refuse to accept delivery and generally coerced the subscribers by suggesting that intentional receipt of the paper might subject them to criminal prosecution. The Postal Service denies this characterization of the conversations between the agents and the subscribers, admitting only that the agent sought to recover from the subscriber a copy of the paper for investigative purposes. Petitioner also alleges that an Assistant Postal Inspector informed it that the December 8 edition would be submitted to the Department of Justice for appropriate action and that the Postal Service intended to contact all the paper's subscribers to convince them to refuse future delivery. Petitioner finally alleges that the Postal Service stated it intended to monitor future publications of "The Daily Rag." Even if these allegations

1. The court may upon motion order that the testimony at a deposition be recorded by other than stenographic means, in which event the order shall designate the manner of recording, preserving, and filing the deposition, and may include other provisions to assure that the recorded testimony is accurate and trustworthy. If the order is made, a party may nevertheless arrange to have a stenographic transcript made at his own expense.

are not proven, it would appear that petitioner has a substantial claim against the Postal Service.[2] However, proof of these allegations would at least bear on the nature and extent of any injunctive relief granted to petitioner. Petitioner's attempt to depose the Postal Service employees involved in the incidents alleged is relevant and necessary to this proof and thus to a resolution of the litigation. We first consider the nature of the District Court's error to lay the foundation for our discussion of the propriety of mandamus relief.

## I.

We find that the District Court's construction of Rule 30(b)(4) is not consonant with the purposes of the Rule. The District Court denied petitioner's motion to take depositions by other than stenographic means for essentially two reasons: (1) the government objected; and (2) petitioner has not demonstrated that a manifest injustice would occur due to the expense of stenographic methods of deposition.[3] Both of these reasons were in turn supported by a general finding that the dangers to accuracy posed by depositions by other than stenographic means required the Court to take a re-

stricted approach to the use of such alternative methods. These reasons do not support a blanket denial of petitioner's motion.

Subpart (b)(4) was added to Rule 30 in 1970 with a cryptic commentary, here set out in the margin.[4] The problem of interpretation raised by the Subpart and its commentary is a result of the fact that the rule states that the judge "may" issue an order permitting depositions by other than stenographic means. The Rule does not state what grounds a trial judge may offer for a refusal to issue such an order. However, the Advisory Committee commentary, while far from lucid, does suggest that the reason for requiring an order—which is, of course, the source of the trial judge's discretion—is to ensure that *appropriate safeguards* are taken to ensure the accuracy of the deposition. It apparently rejects, as one would imply from the promulgation of Subpart (b)(4) in the first place, the notion that the dangers to accuracy are in the abstract sufficient reason for a denial of a motion to take depositions by other than stenographic means. The burden Rule 30(b)(4) would *impose upon the trial judge is to cause the parties together to agree upon a*

**2.** *See* 39 C.F.R. §§ 123.8(b); 953.3–.14 (1973), which have the force of law. United States v. Nixon, 418 U.S. 683, 94 S.Ct. 3090, 3101–3102, 41 L.Ed.2d 1039 (1974). These regulations are supportive of the First Amendment interests that permeate the area of the mailability of printed matter. *See* Blount v. Rizzi, 400 U.S. 410, 91 S.Ct. 423, 27 L.Ed.2d 498 (1971); Lamont v. Postmaster General, 381 U.S. 301, 85 S.Ct. 1493, 14 L.Ed.2d 398 (1965); Hannegan v. Esquire, Inc., 327 U.S. 146, 66 S.Ct. 456, 90 L.Ed. 586 (1946); American School of Magnetic Healing v. McAnnulty, 187 U.S. 94, 23 S.Ct. 33, 47 L.Ed. 90 (1902). First Amendment interests are surely involved in this case. *Compare* the facts of this case *with* Cohen v. California, 403 U.S. 15, 91 S.Ct. 1780, 29 L.Ed.2d 284 (1971).

**3.** The Court's reasoning was as follows:
"The Court recognizes that such a departure from the normal course of deposition-taking can lead to difficulties with the accuracy of the transcription of testimony given, and should be used only where a manifest injustice would occur due to the expense of stenographic recording. Plain-

tiff claims that, being a District of Columbia not-for-profit corporation, its limited resources would not be able to support the taking of the three depositions it contemplates. The Court, in the exercise of its discretion, feels that the objection of the government, coupled with the desire for accuracy in the transcription of testimony, overrides the relatively small additional expense to plaintiff of recorded testimony for three depositions in the usual manner."
Colonial Times, Inc. v. United States Postal Service, Civil No. 1633–73 (D.D.C. filed Dec. 10, 1973).

**4.** In order to facilitate less expensive procedures, provision is made for the recording of testimony by other than stenographic means *e. g.* by mechanical, electronic, or photographic means. Because these methods give rise to problems of accuracy and trustworthiness, the party taking the deposition is required to apply for a court order. The order is to specify how the testimony is to be recorded, preserved, and filed, and it may contain whatever additional safeguards the court deems necessary.

mode of deposition taking which will be approximately as accurate as stenographic depositions and to review the parties' proposal once they have in good faith agreed. The District Judge by his outright rejection of petitioner's motion without specific consideration of the feasibility of proposed safeguards ignored this burden and ruled in a manner inconsistent with the purpose of Rule 30(b)(4).[5]

The fact that the government objected to petitioner's motion and to the proposed method of deposition taking is not relevant to the issue of whether the motion should be denied outright. As a general proposition each party to a civil law suit has the right to take depositions of the other party, absent a protective order entered by the trial judge.[6] It is difficult to imagine that this amendment to Rule 30 would have altered this general rule without a more explicit statement that such was intended. The better view of the function of objection by a party correlates Rule 26(c) protective order considerations[7] with Rule 30(b)(4) motions. Under this view, the objection of a party is cause for the trial court to scrutinize the method of deposition taking to ensure that the problems of accuracy and trustworthiness are adequately handled by the mov-

ant's proposal, such that the opposing party's interests are not prejudiced. The opposing party has a similar duty to make specific objections to the proposed method of deposition taking and may not simply argue that every proposed method is insufficient.

Petitioner makes much of the fact that it and its counsel, the ACLU, do not have sufficient funds to take depositions by ordinary means. The District Court was not impressed by these claims of poverty and did not think that petitioner had made out a case of "manifest injustice." The ability of the movant to pay for stenographic depositions should, as a general matter,[8] be irrelevant to the grant of an order to take depositions by other than stenographic means. The Rule is designed to decrease everyone's stenographic costs whenever that can be accomplished with no loss of accuracy and integrity.

In sum, we conclude that "experimentation with [Rule 30(b)(4)'s] newly authorized procedure should be encouraged rather than blocked . . .."[9] We note that every reported District Court case ruling on the issue—with one exception noted in the margin—has adopted the view of Rule 30(b)(4) set out above.[10] Furthermore,

5. We are not persuaded to a different result by the fact that an earlier draft of Subpart (b)(4) permitted the party seeking the deposition to simply designate the non-stenographic means, that designation being subject to a court order designed to protect accuracy and trustworthiness. See Kallen v. Nexus Corp., 54 F.R.D. 610, 612 n. 1 (N.D.Ill.1972). The final form of the Rule is sufficiently similar to this draft form to support the inference that the purpose of the court order is to review proposed deposition procedures to ensure accuracy and trustworthiness and not to permit the trial judge to deny a proposed deposition simply because that denial would not amount to a "manifest injustice."

6. See Fed.R.Civ.P. 26(c); 30(a).

7. See Fed.R.Civ.P. 26(c); 4 Moore's Federal Practise ¶¶ 26.67–.76 (2d ed. J. Moore & J. Lucas 1974).

8. We, of course, do not mean to hold that ability to pay may never be relevant in mar-

ginal cases of need, when the trial judge is not satisfied with the movant's proposed deposition method.

9. Marlboro Prod. Corp. v. North American Phillips Corp., 55 F.R.D. 487, 489 (S.D.N.Y. 1972) (Frankel, J.).

10. Lucas v. Curran, 62 F.R.D. 336 (E.D.Pa. 1974); Jarosiewicz v. Conlisk, 60 F.R.D. 121 (N.D.Ill.1973); Buck v. Board of Educ., 16 Fed.R.Serv.2d 112 (E.D.N.Y.1972); Marlboro Products Corp. v. North American Phillips Corp., 55 F.R.D. 487 (S.D.N.Y.1972); Westcott v. Neeman, 55 F.R.D. 257 (D.Neb.1972); Carson v. Burlington Northern Inc., 52 F.R.D. 492 (D.Neb.1971); cf. United States v. LaFatch, 382 F.Supp. 630 (N.D.Ohio 1974). In another line of cases, both state and federal courts have permitted video tape and sound tape recordings of the confession or demeanor of an accused individual. See Hendricks v. Swenson, 456 F.2d 503 (8th Cir. 1972) and voluminous authorities cited.

we have verified that six trial judges in this Circuit have permitted the taking of depositions by other than stenographic means.[11] Thus, the range of the trial judge's discretion under Rule 30(b)(4) is limited to those actions necessary to promote accuracy and trustworthiness. The judge may deny a movant's request under Rule 30(b)(4) only when he is convinced, after thorough examination of the movant's proposal and on the basis of the other party's specific objections and the judge's experience with the differing forms of deposition procedure, that the particulars of the request do not reasonably ensure accuracy equivalent to stenographic depositions. The District Judge in his decision did not make this sort of inquiry. It follows that in so doing he mistook the purpose of Rule 30(b)(4) and committed error.

▪ One issue which must be confronted in further proceedings is whether the operator of the tape recorder or other non-stenographic recording device must be independent of the parties.[12] Pursuant to the view of Rule 30(b)(4) stated above, the function of the District Court is to review this particular issue to determine whether such an independent operator is necessary to preserve trustworthiness and accuracy. The independent operator would be a very significant if not the most significant expense in a deposition proceeding. Since the purpose of the Rule is to cut expense, the operator should be eliminated unless no alternatives exist to guarantee trustworthiness. Several safeguards which might provide an alternative to the independent operator have been suggested. First, the testimony may be recorded on two recorders and the opposing party may retain the tape from the second record. Second, the original tape once made should be deposited with the Court directly after the deposition to serve as a check on the accuracy of a transcript made subsequent to the deposition.

The one possible exception to this apparent acceptance of non-stenographic forms of proof is Perry v. Mohawk Rubber Co., 63 F.R.D. 603 (D.S.C.1974). The case may be distinguished as involving a frivolous request for a video tape deposition and the denial thereof analogized to a Rule 26(c) protective order. And we might be inclined to agree that where deposition by non-stenographic means is burdensome on the parties, the movant must show more than "personal preference", 63 F.R.D. at 607, to obtain a court order. However, it appears that Perry is not fully consistent with the liberal view of Rule 30(b)(4) outlined herein.

In one other case, Carter v. Joseph Bancroft & Sons, 360 F.Supp. 1103, 1111–1112 (E.D.Pa.1973), the court denied, in considering a motion for a new trial, a motion to use an electronic recording when the opposing party objected that he had not had time to familiarize himself with the contents of a recording previously made without an order.

11. Alison v. Mastrovito, No. 2273–71 (Parker, J.); Washington Mobilization Comm. v. Wilson, No. 779–70 (Waddy, J.); Clark v. Webber, No. 2561–70 (Bryant, J.); Carter v. Carlson, No. 339–69 (Flannery, J.); A. Quaker Action Group v. Morton, No. 688–69 (Hart, J.); Allen v. Hickel, No. 1951–69 (Pratt, J.).

The experience of this Circuit concerning the transcription of stenographer's notes of trial proceedings offers an additional reason for encouraging the development of non-stenographic means of deposition-taking. This Court has on numerous occasions had to warn the District Court and their reporters that it will not tolerate inordinate delay in the transcription of stenographer's notes. These warnings have included orders to show cause why the reporter should not be held in contempt of this Court. In one particularly egregious case, a court reporter was actually held in contempt and jailed after a show cause order by this Court.

The delay in transcription is generally caused by the large amount of in-court time spent by the court reporters.

At present the District Court and their reporters protect against error by tape recording the trial, exactly the sort of recordation that petitioner in this case proposes. However, it should be noted that the Sixth Circuit has stated that an untranscribed phonographic record of a habeas corpus proceeding violates Fed.R.App.P. 10. See Wedding v. Wingo, 483 F.2d 1131, 1137 (6th Cir. 1973), aff'd on other grounds, 418 U.S. 461, 94 S.Ct. 2842, 41 L.Ed.2d 879 (1974). Provision of an untranscribed tape recording to an indigent defendant survived an equal protection challenge in State ex rel. Moreno v. Floyd, 85 N.M. 699, 516 P.2d 670 (1973).

12. Compare Kallen v. Nexus Corp., 54 F.R.D. 610 (N.D.Ill.1972) with Marlboro Prod. Corp. v. North American Phillips Corp., 55 F.R.D. 487, 490 (S.D.N.Y.1972) and Lucas v. Curran, 62 F.R.D. 336, 338–339 (E.D.Pa.1974).

Third, the witness must read a transcript of the recording made by the moving party and sign it under oath before the transcript may be admitted in evidence. The District Court should carefully consider whether these safeguards are sufficient to dispense with the independent operator. This consideration should be made in light of the over-all spirit of experimentation that animates Rule 30(b)(4). We, of course, do not mean by this opinion to foreclose any conclusion based upon experience in the use of depositions in which the operator is not independent of the parties.

## II.

We now turn to a discussion of whether mandamus will lie to correct the District Court's erroneous view of Rule 30(b)(4). Use of the writ in ongoing litigation runs counter to the general rule that a party may appeal only a final judgment. The policy behind this "final judgment" rule is one of judicial administration. Permitting a party to appeal every order entered by the trial court would substantially delay trial and vastly increase the expense of litigation.[13] Present crowded appellate dockets attest to the wisdom of this rule. However, there are countervailing considerations which make clear that this rule can not receive all-pervasive operation. Some egregious errors by the trial court may so misdirect the trial that a failure to immediately correct will force the parties through a useless trial, only to be ordered to a re-trial after appellate reversal of the final judgment.[14] But this particular countervailing consideration can not be permitted to authorize an *ad hoc* judgment on each mandamus petition to determine whether an exemption

from the final judgment rule is warranted on the particular facts. Such a practise would be subversive of the very policy of the final judgment rule since every litigant would feel that his case is just such an exemption. Thus, this Court, even if it dismissed these potentially frivolous mandamus petitions, would be forced to expend the effort which it is the purpose of the final judgment rule to avoid. The final judgment rule is effective only if it deters mandamus petitions in the first place. So if there are to be exemptions to the final judgment rule, those exemptions should be indulged only in clearly and narrowly defined areas to maintain the wholesome deterrence of the final judgment rule.[15]

 Errors of the sort traditionally cognizable by mandamus are those which result from the District Court acting outside its "jurisdiction." But courts have never confined themselves to a narrow definition of what is a "jurisdictional" error and have generally recognized that the true test is whether the trial court had any legal power to act or refuse to act as it did.[16] This view of "jurisdictional" errors suggests the possibility that a trial court has no jurisdiction to enter an erroneous ruling; but that suggestion has been specifically rejected.[17] The concept of legal power to act implies not only a limitation on the *type* of error cognizable in mandamus (*i. e.* whether the court merely abused its discretion or instead acted in a manner in which it had no discretion to act) but also on the *class* of errors so cognizable. Despite a non-technical view of "jurisdictional" errors, there is surely a class of errors which are, no matter how egregious, not "jurisdictional" and not within

**13.** *See* Cobbledick v. United States, 309 U.S. 323, 324–325, 60 S.Ct. 540, 84 L.Ed. 783 (1940); American Express Warehousing, Ltd. v. Transamerica Ins. Co., 380 F.2d 277, 280 (2d Cir. 1967).

**14.** *See* Crick, The Final Judgment as a Basis for Appeal, 41 Yale L.J. 539 (1932); Developments in the Law—Discovery, 74 Harv.L.Rev. 940, 993 (1961).

**15.** *Cf.* Thornton v. Corcoran, 132 U.S.App. D.C. 232, 407 F.2d 695, 703 (1969).

**16.** *See* Will v. United States, 389 U.S. 90, 95, 88 S.Ct. 269, 19 L.Ed.2d 305 (1967), *quoting* De Beers Consol. Mines v. United States, 325 U.S. 212, 217, 65 S.Ct. 1130, 89 L.Ed. 1566 (1945); Roche v. Evaporated Milk Ass'n, 319 U.S. 21, 26, 63 S.Ct. 938, 87 L.Ed. 1185 (1943). *See also* Donnelly v. Parker, 158 U.S. App.D.C. 335, 486 F.2d 402, 405–406 (1973).

**17.** Will v. United States, 389 U.S. 90, 98 n. 6, 88 S.Ct. 269, 19 L.Ed.2d 305 (1967).

the class of errors cognizable in mandamus. As a general proposition, discovery orders are not jurisdictional and thus may not be reached under traditional concepts of mandamus except in the most extraordinary circumstances.[18]

In those cases involving errors which are undoubtedly in the jurisdictional class, courts have not simply deferred to the existence of some discretion on the part of the trial judge, but have looked to whether the trial judge misconceived the nature of his discretion or otherwise considered an irrelevant factor or refused to consider a relevant factor in making the decision under review.[19] The fact that the error of discretion was not apparent until after the court decided the principal case is no reason for refusing to decide the issue.

We point out this development because it relates to a more modern ground for the issuance of mandamus—the exercise of an appellate supervisory power.[20] In

particular, the Supreme Court in Schlagenhauf v. Holder, 379 U.S. 104, 111, 85 S.Ct. 234, 13 L.Ed.2d 152 (1964), held that mandamus would lie to review an "issue of first impression" in order to "settle new and important problems." [21] Schlagenhauf involved an issue of discovery, an issue clearly outside the normal class of errors reviewable under mandamus. However, it did involve an issue of pure law—even assuming the facts as the District Court perceived them to be, did the District Court have discretion to act or refuse to act as it did. Schlagenhauf authorizes departure from the final judgment rule when the appellate court is convinced that resolution of an important, undecided issue will forestall future error in trial courts, eliminate uncertainty and add importantly to the efficient administration of justice. The principle of Schlagenhauf has been recently applied in this and other Circuits.[22]

**18.** *See* Donnelly v. Parker, 158 U.S.App.D.C. 335, 486 F.2d 402, 406–407, 408 n. 28 (1973); International Business Machines Corp. v. United States, 480 F.2d 293 (2d Cir. 1973) (en banc); American Express Warehousing, Ltd. v. Transamerica Ins. Co., 380 F.2d 277 (2d Cir. 1967); 4 Moore's Federal Practise ¶ 26.83 [9.–3], at 26–612 to 615 (2d ed. J. Moore & J. Lucas 1974). An example of the extraordinary circumstances which might justify traditional mandamus in the area of discovery is Investment Properties Int'l, Ltd. v. IOS, Ltd., 459 F.2d 705 (2d Cir. 1972).

**19.** This has been most evident in the cases dealing with transfer of actions. *See* Van Dusen v. Barrack, 376 U.S. 612, 84 S.Ct. 805, 11 L.Ed.2d 945 (1964); Platt v. Minnesota Mining & Mfg. Co., 376 U.S. 240, 244–245, 84 S.Ct. 769, 11 L.Ed.2d 674 (1964); Jones v. Gasch, 131 U.S.App.D.C. 254, 404 F.2d 1231, 1242 (1967), cert. denied, 390 U.S. 1029, 88 S.Ct. 1414, 20 L.Ed.2d 286 (1968); Fine v. McGuire, 139 U.S.App.D.C. 341, 433 F.2d 499 (1970); Wiren v. Laws, 90 U.S.App.D.C. 105, 194 F.2d 873 (1951). *See also* Pfizer, Inc. v. Lord, 456 F.2d 532 (8th Cir. 1972); In re Union Leader Corp., 292 F.2d 381 (1st Cir.), cert. denied, 368 U.S. 927, 82 S.Ct. 361, 7 L.Ed.2d 795 (1961); Mitchell v. Sirica, 163 U.S.App.D.C. 373, 502 F.2d 375, 387–390, cert. denied, 418 U.S. 955, 94 S.Ct. 3232, 41 L.Ed.2d 1177 (1974) (MacKinnon, J. dissenting).

**20.** *See* La Buy v. Howes Leather Co., 352 U.S. 249, 77 S.Ct. 309, 1 L.Ed.2d 290 (1957); Note,

Supervisory and Advisory Writs Under the All Writs Act, 86 Harv.L.Rev. 595, 607 et seq. (1973); 9 Moore's Federal Practise ¶ 110.26, at 287 (2d ed. J. Moore & B. Ward 1973).

**21.** The holding of Schlagenhauf is not disturbed by Will v. United States, 389 U.S. 90, 104 n. 14, 88 S.Ct. 269 (1967). First, Schlagenhauf involved a question of discovery and thus could not have been based on traditional concepts of mandamus. *See also* Note, *supra* note 20, at 614–16. Second, as will be developed in the text, the case *sub judice* also implicates a question of the District Court's power to deny motions to take depositions by other than stenographic means—whether the District Court has the "power" to consider that a manifest injustice will occur unless the motion is granted and whether the Court has the "power" to deny outright a motion of this sort without a particularized scrutiny of the safeguards proposed. Third, in Will the Circuit Court decision under review did not contain the exposition which is essential to supervisory or advisory mandamus. Fourth, Will involved an interlocutory appeal by the government, appeals which have traditionally been disfavored. *See also* United States v. Green, 134 U.S.App.D.C. 278, 414 F.2d 1174 (1969). Finally, as reflected in the cases cited note 22 *infra*, the various courts which have considered the Schlagenhauf principle after Will have at least implicitly held that Will does not modify that principle.

**22.** *See* Nixon v. Sirica, 159 U.S.App.D.C. 58, 487 F.2d 700, 706–708 (1973) (en banc); In re Ellsberg, 446 F.2d 954 (1st Cir. 1971); United

*Schlagenhauf* requires a grant of the writ in this case. However, in so ruling, we wish to make very explicit the specific considerations which lead us to this conclusion. Not every issue of first impression or every "basic, undecided" problem should be the basis for mandamus relief. First, we note that this case does present an issue of first impression. No appellate court has yet ruled, so far as we can discern, on the proper scope of the trial judge's discretion under Rule 30(b)(4). Furthermore, this issue relates to an important aspect of discovery law—the manner of taking depositions. Rule 30(b)(4), as indicated by the various District Courts which have considered it, has the "potential for making a significant contribution to the efficient and economic administration of justice. . . . ."[23] The high cost of justice is a concern of all informed citizens.[24] A liberal view of Rule 30(b)(4), designed to encourage experimentation to reduce costs, surely is an important step towards a more economic system of justice.

Second, there is an undeniable need to forestall future error and uncertainty in the administration of Rule 30(b)(4). The District Court misconceived the nature of its discretion under Rule 30(b)(4) and thus considered an irrelevant factor and did not consider certain relevant factors in making its decision. Thus, the Court's error went to the source of its power under Rule 30(b)(4) and is the type of error, though not in the class of errors, traditionally reviewable under mandamus. By correcting this error, we may contribute to the development of standards under Rule 30(b)(4) in a way which promotes the necessary spirit of experimentation, which is crucial to a crystallization of experience with methods other than stenographic deposition. The essential didactic and expository function of supervisory mandamus is thus best served in situations such as the one we face here.

Third, resolution of this issue of discovery may be significant to the particular case under review. The availability of depositions by other than stenographic means may determine the state of the record presented to the District Court for decision and to this Court for review. If the record is inadequate, as it seemingly would be, then the Rule 30(b)(4) issue could well be controlling in the litigation.[25] If the record is considered ade-

States v. United States District Court, 444 F.2d 651 (4th Cir. 1971), aff'd, 407 U.S. 297, 307 n. 3, 92 S.Ct. 2125, 32 L.Ed.2d 752 (1972); United States v. Hughes, 413 F.2d 1244 (5th Cir. 1969), vacated as moot sub nom. United States v. Gifford-Hill-American, Inc., 397 U.S. 93, 90 S.Ct. 817, 25 L.Ed.2d 77 (1970); Miller v. United States, 403 F.2d 77 (2d Cir. 1968) (alternative ground); Atlass v. Miner, 265 F.2d 312 (7th Cir. 1959), aff'd, 363 U.S. 641, 80 S.Ct. 1300, 4 L.Ed.2d 1462 (1960). *Cf.* SEC v. Krentzman, 397 F.2d 55, 59 (5 Cir. 1968). To be sure, Nixon v. Sirica did involve traditional grounds for mandamus but it reached the most important question in the case—under what circumstances presidential conversations are privileged from non-disclosure—on the basis of the *Schlagenhauf* principle.

**23.** Kallen v. Nexus Corp., 54 F.R.D. 610, 613 (N.D.Ill.1972).

**24.** *Cf.* Ortwein v. Schwab, 410 U.S. 656, 93 S.Ct. 1172, 35 L.Ed.2d 572 (1973); Boddie v. Connecticut, 401 U.S. 371, 91 S.Ct. 780, 28 L.Ed.2d 113 (1971); Lindsey v. Normet, 405 U.S. 56, 76–79, 92 S.Ct. 862, 31 L.Ed.2d 36 (1972); Gardner v. California, 393 U.S. 367, 89 S.Ct. 580, 21 L.Ed.2d 601 (1969); Griffin v.

Illinois, 351 U.S. 12, 76 S.Ct. 585, 100 L.Ed. 891 (1956); Adkins v. E. I. Du Pont De Nemours & Co., 335 U.S. 331, 339–340, 69 S.Ct. 85, 93 L.Ed. 43 (1948); Note, A First Amendment Right of Access to the Courts for Indigents, 82 Yale L.J. 1055 (1973).

**25.** *Cf.* 28 U.S.C. § 1292(b) (1970); Gillespie v. United States Steel Corp., 379 U.S. 148, 85 S.Ct. 308, 13 L.Ed.2d 199 (1964); Green v. Wolf Corp., 406 F.2d 291 (2d Cir. 1968), cert. denied, 395 U.S. 977, 89 S.Ct. 2131, 23 L.Ed.2d 766 (1969); Groover, Christie & Merritt v. LoBianco, 119 U.S.App.D.C. 50, 336 F.2d 969 (1964).

In this sense, the standards of mandamus may be incorporated to the standards for the grant of injunctive relief (the writ being viewed as an appellate injunction of sorts). For possible uses of this "equitable" mandamus, *see* Beacon Theatres, Inc. v. Westover, 359 U.S. 500, 79 S.Ct. 948, 3 L.Ed.2d 988 (1959); Harper & Row Publishers, Inc. v. Decker, 423 F.2d 487 (7th Cir. 1970); aff'd by an equally divided court, 400 U.S. 348, 91 S.Ct. 479, 27 L.Ed.2d 433 (1971); Southern Ry. Co. v. Templar, 463 F.2d 967 (10th Cir. 1972); United States v. Hemphill, 369 F.2d 539 (4th Cir. 1966); In re United States, 348

quate, then the Rule 30(b)(4) issue will not necessarily affect the result in this case. However, we note that discovery issues of the sort raised by this case, while important to the general course of litigation, are often collateral to the litigation and thus lost to appellate review in fact if not in theory.[26]

 In conclusion, we find that mandamus lies in this case because the issue of discovery involved is one of first impression and is important to the administration of discovery. The error asserted concerns a misapprehension of the basic purpose of the discovery rule in issue— that is, the use of irrelevant factors in decision and a failure to consider certain relevant factors—and its correction will provide direction to the District Court in developing standards under Rule 30(b)(4). Finally, the error may be significant to the particular case under review. If it is not, it is the sort of issue which is important to litigation in general but often lost to appellate review. All

of these considerations support our decision that mandamus lies in this case. We emphasize that unless these considerations are present, the normal policy is that mandamus does not lie to review discovery orders. The views stated in Donnelly v. Parker, 158 U.S.App.D.C. 335, 486 F.2d 402 (1973) represent the approach of the Court and those views are not modified by anything stated herein. On this basis, we hold that the writ lies but find it unnecessary to issue a formal writ as part of our mandate. "We trade instead upon our confidence that without more the District Court will now take action to rectify the error which gave birth to the present proceeding."[27]

So ordered.

MacKINNON, Circuit Judge:

In my view mandamus is an inappropriate remedy at this time in this case and I would just dismiss the petition without more.

---

F.2d 624 (1st Cir. 1965); Hartley Pen Co. v. United States Dist. Court, 287 F.2d 324 (9th Cir. 1961). *See generally* Donnelly v. Parker, 158 U.S.App.D.C. 335, 486 F.2d 402, 409 (1973) (*dictum*). *Compare* International Business Machines Corp. v. United States, 480 F.2d 293 (2d Cir. 1973) (en banc); United States v. Anderson, 150 U.S.App.D.C. 336, 464 F.2d 1390 (1972). Indeed, it is settled that mandamus will not lie where an alternate remedy at law exists. *See* Ex parte Republic of Peru, 318 U.S. 578, 584, 63 S.Ct. 793, 87 L.Ed. 1014 (1943); Cartier v. Secretary of State, 165 U.S.App.D.C. 130, 506 F.2d 191 (1974).

Even if the various factors mentioned in the text are not present and, thus, the court is prevented from issuing the writ, the expository and didactic function of supervisory mandamus may be performed by publication

of a fully reasoned opinion rejecting the writ but indicating doubts about the District Court's decision. *See* Ehrlichman v. Sirica, Nos. 74–1826, –1829 (D.C.Cir. Aug. 22, 1974); Strachan v. Sirica, No. 74–1868 (D.C.Cir. Sept. 20, 1974) (Statement of Bazelon, C. J.); Stans v. Gagliardi, 485 F.2d 1290 (2d Cir. 1973); United States v. Allen, 133 U.S.App. D.C. 84, 408 F.2d 1287 (1969); Thornton v. Corcoran, 132 U.S.App.D.C. 232, 407 F.2d 695 (1969).

26. *Cf.* Cohen v. Beneficial Industrial Finance Corp., 337 U.S. 541, 69 S.Ct. 1221, 93 L.Ed. 1528 (1949) and discussion in note 25 *supra.*

27. Yablonski v. United Mine Workers of America, 147 U.S.App.D.C. 193, 454 F.2d 1036, 1042 (1971), cert. denied, 406 U.S. 906, 92 S.Ct. 1609, 31 L.Ed.2d 816 (1972).