David C. SANCHEZ and Marilyn Sanchez, Petitioners,

v.

DISTRICT COURT IN AND FOR the COUNTY OF LARIMER and the Honorable J. Robert Miller, a Judge of the said Court, Respondents.

No. 80SA438.

Supreme Court of Colorado, En Banc.

Feb. 23, 1981.

As Modified on Denial of Rehearing March 9, 1981.

Colorado Rural Legal Services, Inc., Glenn G. Meyers, Fort Collins, for petitioners.

Fischer & Wilmarth, Steven G. Francis, Fort Collins, for respondents.

QUINN, Justice.

David and Marilyn Sanchez (petitioners) filed this original proceeding seeking relief in the nature of mandamus under C.A.R. 21. The petitioners claim that the respondent court grossly abused its discretion by denying their motion under C.R.C.P. 30(b)(4) to take tape recorded depositions of various persons in connection with a pending lawsuit filed by the petitioners against a retail car dealer. The petitioners submitted with their motion a proposed order outlining the procedures and conditions under which the depositions would be taken. The district court denied the motion because the petitioners did not establish their indigency. We issued a rule to show cause and now make the rule absolute.

The facts relevant to the issue raised by this proceeding may be briefly stated. In January 1979 the petitioners, husband and wife with two minor children, purchased by retail installment contract a 1972 AMC Ambassador automobile from Economy Sales and Services, Inc., for $1415. They apparently were delinquent in monthly payments and in the summer of 1979 the seller repossessed and sold the car. The petitioners, through Colorado Rural Legal Services, Inc., filed a complaint against the seller alleging various claims: the violation of the disclosure requirements of the Consumer Credit Protection Act, 15 U.S.C. § 1601 *et seq.*, and of the Colorado "Uniform Consumer Credit Code," section 5–1–101 *et seq.*, C.R.S.1973; wrongful repossession and conversion; intentional misrepresentation; breach of implied warranty of merchantability, section 4–2–314, C.R.S.1973; deceptive trade practices, section 6–1–105, C.R.S. 1973; wrongful resale in violation of the Uniform Commercial Code, section 4–9–501 *et seq.*, C.R.S.1973; and a claim for punitive damages and attorney fees. The seller answered the complaint and the petitioners thereafter pursued some discovery by written interrogatories, a request for production of documents and a request for admissions.

In April 1980 the petitioners moved for leave under rule 30(b)(4) to take the depositions of officers and agents of the seller and other witnesses by means of a tape recorder. The respondent court denied the motion for the reason that the petitioners had not shown proof of a financial need to proceed in this manner. In September 1980 the petitioners again filed an identical motion supported by two affidavits. One affidavit showed their monthly family income

to be $642 with monthly expenses and outstanding debts in excess of this amount. The other affidavit listed the average Colorado costs for a stenographic deposition at $10 to $15 per hour attendance fee with a two hour minimum, and a transcription cost ranging from $1.85 to $2.30 per page of original transcript.[1] The petitioners also filed a proposed order requiring the imposition of various safeguards to ensure accuracy and trustworthiness, including procedures for the taping process and for the transcription of the recorded testimony, and for the filing of a sworn certification that the deposition filed with the court is a true record of the testimony given by the witness.[2] The respondent court on September 4, 1980 once again denied the motion "on the basis that the affidavit shows these plaintiffs are not indigent plaintiffs" and "are making somewhere in the neighborhood of $650 or more a month . . . ." An original proceeding followed in this court.

We conclude that the respondent court abused its discretion in denying the petitioners' motion under rule 30(b)(4). Before addressing the merits of the issue, however, it is appropriate that we explain the reasons for our exercise of original jurisdiction.

## I.

▆▆▆▆ This court's original jurisdiction has its source in Article VI, Section 3, of the Colorado Constitution; its exercise is discretionary and governed by the circumstances of the case. *E. g., Shore v. District Court,* 127 Colo. 487, 258 P.2d 485 (1953). We have not been reluctant to exercise that original jurisdiction when an order, otherwise interlocutory in character, will place a party at a significant disadvantage in litigating the merits of the controversy. *E. g., People v. District Court,* Colo., 623 P.2d 55 (1981); *Varner v. District Court,* Colo., 618 P.2d 1388 (1980); *Chicago Cutlery Co. v. District Court,* 194 Colo. 10, 568 P.2d 464 (1977). Although matters of pretrial discovery are ordinarily within the discretion of the trial court, they are not exempted

---

1. The affidavit was signed by the President Elect of the Colorado Shorthand Reporters' Association. It stated that each hour of deposition reporting will produce approximately 30 to 35 pages of transcript.

    According to a survey of court reporters' fees printed in Litigation News (Oct. 1976), the costs of stenographic reporting vary from state to state ranging from $10–$150 per hour for attendance and 45¢ to $3 per page of original transcript.

2. The proposed order provided, in pertinent part, as follows:

    "IT IS, THEREFORE, ORDERED that the Plaintiffs be and hereby are permitted to take testimony at the deposition of Defendant and such other persons as are necessary to complete discovery in this case by other than stenographic means, i. e., by means of a tape recorder.

    "IT IS FURTHER ORDERED that the tape recorded depositions of Defendant and other heretofore mentioned persons upon proper notice and subpoena (if necessary) to these persons, shall be taken subject to the following terms and conditions:

    "1. Two (2) tape recorders provided by Plaintiffs with separate microphones will be used to record the deposition. Said tape recorders will be available at the office of the attorney for Plaintiffs for inspection by the attorney for Defendant for a period of not less than two (2) days prior to the taking of the depositions.

    "2. The witness shall be sworn by a Notary Public acting as officer of the Court. The 'officer' who administers the oath shall be present during the entire deposition. The 'officer' shall also operate and monitor the recording equipment during the deposition.

    "3. Speakers shall identify themselves whenever necessary for clarity of the record.

    "4. At the conclusion of the recording, the 'officer' shall certify that the witnesses were duly sworn by him or her, and that the deposition is a true record of the testimony given by the witnesses. A sworn statement by the 'officer' to this effect shall be kept with the tape(s).

    "5. Subsequent to the deposition one (1) of the original tape(s) shall be appropriately labeled, placed in a sealed envelope, and filed immediately with the Court by the 'officer' present at the deposition.

    "6. The Plaintiffs will provide for the Defendant's attorney a written transcript of the tape recording for bona fide correction, signature, and filing with the registry of the Court.

    "7. Any party may have a stenographer present at the deposition and have a stenographic transcription made at his own expense.

    "8. The tape recording of the deposition or the written transcription, may be used in the Court or any other proceeding in open Court in accord with Rule 32 *C.R.C.P.*

from extraordinary relief under appropriate circumstances. *E. g., Seymour v. District Court*, 196 Colo. 102, 580 P.2d 302 (1978); *Tyler v. District Court*, 193 Colo. 31, 561 P.2d 1260 (1977); *Lucas v. District Court*, 140 Colo. 510, 345 P.2d 1064 (1959).

■ In this case it is apparent that the respondent court misapprehended the nature of its discretion. It accorded conclusive significance to an irrelevant factor (the petitioners' failure to establish indigency) and, concomitantly, disregarded the controlling criteria (accuracy and trustworthiness) in denying the petitioners' motion for employment of this inexpensive discovery technique. In view of the petitioners' economic condition, the denial of the petitioners' motion results in the virtual preclusion of any deposition discovery in preparation for the trial of this matter. Such denial, which is interlocutory in nature, may otherwise evade effective review and, under these circumstances, the exercise of our original jurisdiction is appropriate. *See, e. g., Lucas v. District Court, supra.*

Furthermore, we have not previously addressed the issue of tape recorded depositions under C.R.C.P. 30(b)(4). This proceeding affords us an opportunity to delineate the purpose and scope of the rule so that the practicing bar may take full advantage of its "potential for making a significant contribution to the efficient and economic administration of justice." *Colonial Times, Inc. v. Gasch*, 509 F.2d 517, 525 (D.C.Cir. 1975). Thus, the importance of the issue here raised to the administration of pretrial discovery in general furnishes us an additional reason to exercise original jurisdiction in this matter.

## II.

C.R.C.P. 30(b)(4) was promulgated in 1970 with an effective date of April 1, 1970. The rule is identical to its federal counterpart, F.R.C.P. 30(b)(4), and provides:

"The court may upon motion order that the testimony at a deposition be recorded by other than stenographic means, in which event the order shall designate the manner of recording, preserving, and filing the deposition, and may include other provisions to assure that the recorded testimony will be accurate and trustworthy. If the order is made, a party may nevertheless arrange to have a stenographic transcription made at his own expense." [3]

The Note of the Advisory Committee to the Federal Rules of Civil Procedure states in rather cryptic fashion that the purpose of the rule is to facilitate "less expensive procedures" as an alternative to the high cost of stenographic recording.

■ Utilization of the rule facilitates participation of the economically disadvantaged in effective discovery techniques through the use of inexpensive modern technology. *Lucas v. Curran*, 62 F.R.D. 336 (E.D.Pa.1974). Application of the rule to an inexpensive mode of deposition discovery should not be conditioned on a showing of indigency, a showing of financial need, or economic disparity between the parties. As Chief Judge Bazelon observed in *Colonial Times, Inc. v. Gasch*, 509 F.2d 517, 521 (D.C.Cir. 1975):

"The ability of the movant to pay for stenographic depositions should, as a general matter, be irrelevant to the grant of an order to take depositions by other than stenographic means. The Rule is designed to decrease everyone's stenographic costs whenever that can be accomplished with no loss of accuracy and integrity."

---

**3.** F.R.C.P. 30(b)(4) was amended as of August 1, 1980, to authorize the *parties to stipulate in writing*, or the court upon motion to order, that testimony at a deposition be recorded by other than stenographic means. The amendment makes explicit what already was implicit in F.R.C.P. 29, which provides for written stipulations regarding discovery. The Note of the Advisory Committee states that the purpose of the amendment is "to encourage parties to agree to the use of electronic recording of depositions so that conflicting claims with respect to the potential of electronic recording for reducing costs of depositions can be appraised in the light of greater experience." In keeping with the effort to reduce discovery costs, F.R.C.P. 30(b)(7) was also amended as of August 1, 1980, to provide for a written stipulation or a court order for depositions by telephone.

The respondent court in this case misconceived the nature of its discretion by conditioning the application of the rule upon a showing of indigency by the petitioners. Rule 30(b)(4) contemplates no such requirement and we have found no authority so construing it.[4] Quite the contrary, the high cost of litigation being a concern to all, a construction of a rule that encourages experimentation for the purpose of reducing costs "is an important step toward a more economic system of justice." *Colonial Times, Inc. v. Gasch*, 509 F.2d at 525. *See also, e. g., Champagne v. Hygrade Fruit Products, Inc.*, 79 F.R.D. 671 (E.D.Wash. 1978); *Lucas v. Curran, supra; Marlboro Products Corp. v. North American Philips Corp.*, 55 F.R.D. 487 (S.D.N.Y.1972).

■ We reject the suggestion that, as a condition precedent to taking tape recorded depositions, the moving party first must make a good faith effort to obtain the information by other discovery methods. No such requirement is applicable to a stenographic deposition and no good reason exists for treating a tape recorded deposition any differently. The rules of civil procedure sanction the use of all discovery methods and the frequency of use of these methods should not be limited, C.R.C.P. 26(a), unless there is a showing of good cause based on the particular circumstances of the case, C.R.C.P. 26(c).

■ A trial judge properly may deny a motion for tape recorded depositions where the objecting party shows that there exists a potential for abuse or harassment of a witness or party, *see U.A.W. v. National Caucus of Labor Committees*, 525 F.2d 323 (2d Cir. 1975), or where the objecting party otherwise establishes a bona fide claim for protective orders under rule 26(c). 4A *J. Moore, Federal Practice* ¶ 30.57[14] (1980–81 Cum.Supp.). In the absence of exceptional circumstances, however, the exercise of discretion in ruling on a discovery motion for tape recorded depositions should be limited to considerations of accuracy and trustworthiness with respect to the procedures and conditions to be followed in the recording, transcription, and filing of the depositions.

There are no circumstances present here indicating any basis for the outright denial of the petitioners' motion under rule 30(b)(4). Because the trial court incorrectly denied the motion on the basis of petitioners' failure to establish indigency, it gave no consideration to the general criteria of accuracy and trustworthiness in petitioners' proposed method of deposition discovery. We therefore address the procedures and conditions outlined in the petitioners' proposed order for the purpose of determining whether they ensure the reliability contemplated by rule 30(b)(4) in deposition discovery.

### III.

■ The petitioners' proposed order contained various provisions governing the recording process and the subsequent transcription and filing of the deposition. These provisions included the use of two tape recorders with separate microphones, the administration of the oath to witnesses, the monitoring of the recording equipment, a procedure for the identification of speakers, the filing of a sworn certification by the superintending officer, a procedure for filing the tapes with the court, the transcription of testimony, a procedure for correction and signature by the witness, and the filing of the transcribed deposition with the court. The respondents argue that these provisions are deficient because they do not require an independent operator for the recording equipment and an independent transcriber for the completed tapes. We consider such requirements as counter-

---

4. We do not read *Perry v. Mohawk Rubber Co.*, 63 F.R.D. 603 (D.S.C.1974), aff'd, 529 F.2d 516 (4th Cir. 1976), as requiring a showing of indigency or even economic need to take *tape recorded* depositions. In *Perry* the plaintiff requested permission to take *videotape* depositions in addition to stenographic depositions but asserted no particular reason for such procedure. In denying the motion the court, after noting the procedure would increase rather than reduce the costs of discovery, found the request inimical to the cost saving purposes of rule 30(b)(4).

productive to the obvious purposes of C.R.C.P. 30(b)(4).

The requirement of an independent operator would result in a significant increase in expense for tape recorded depositions. To that extent the requirement impairs *pro tanto* the cost saving objectives of the rule. Recording equipment is manageable by persons of ordinary intelligence and any "supposed need for neutrality in the operator seems likely to prove illusory in the actual circumstances of the deposition proceeding." *Marlboro Products Corp. v. North American Philips Corp., supra* at 489. Opposing counsel and others in attendance undoubtedly will guard against any misbehavior in the recording process. Moreover, rule 30(b)(4) affords any party the right to have the proceedings taken stenographically at his own expense in a case of special concern.

Similar considerations militate against any requirement for an independent transcriber. Judge Frankel's observation in *Marlboro Products Corp. v. North American Philips Corp.,* supra at 489, is appropriate here: "We feel comfortable, until or unless unimagined experience teaches otherwise, in assuming that members of our bar will not be doctoring tapes." We extend that assumption to include the superintending officer who, under the provisions of the petitioners' proposed order, must file a sworn certification with the court that "the witnesses were duly sworn . . . and that the deposition is a true record of the testimony given by the witnesses." [5]

The respondent court also asserts that the petitioners' proposed order fails to achieve the conditions of technological reliability that otherwise might establish cause for tape recorded depositions. In particular, it is suggested that accuracy and trustworthi-

ness require at least some of the following instrumentalities: microphones for each speaker; a third tape recorder for playback; a detailed log index with a cross reference to all parties and exhibits; a master control for all recorders; a capacity for monitoring "off tape" to guarantee that a recording is being made; and recorders with synchronized digital counters. We believe such stringent requirements not only are unnecessary but, more importantly, would impose such an economic burden on the moving party as to make resort to rule 30(b)(4) prohibitive.

While an abundance of caution surfaced at times in the early days of experimentation with tape recorded depositions, *e. g., Wescott v. Neeman,* 55 F.R.D. 257 (D.Neb. 1972); *Kallen v. Nexus Corp.,* 54 F.R.D. 610 (N.D.Ill.1972), such rigor in implementation is not required today. Courts have found that tape recordings are quite accurate and the need for complicated equipment should be confined to the infrequent exceptional situation not present here. Most cases addressing the requirements for tape recorded depositions have taken the view that cumbersome and expensive procedures defeat the purpose of the rule authorizing their use. *E. g., Colonial Times v. Gasch, supra; Champagne v. Hygrade Food Products, Inc., supra; Lucas v. Curran, supra; Marlboro Products Corp. v. North American Philips Corp., supra.*

Technological advances have made the tape recorder the functional equivalent of stenographic accuracy. We cannot demand infallibility in this area. As every trial lawyer and judge knows, "the live stenographer cannot perfectly transcribe shouted arguments with four people talking at once either—so why should tape recorders be

---

**5.** C.R.C.P. 28(c) provides that a deposition shall not be taken before a person who is a relative or employee or counsel of any of the parties. The rule is designed to insure trustworthiness in the reporting process. *Lavarett v. Continental Briar Pipe Co.,* 25 F.Supp. 790 (E.D.N.Y. 1939). Unless the parties otherwise stipulate under C.R.C.P. 29, the general practice for stenographic depositions is to employ an independent shorthand reporter. In contrast to a stenographic reporter, the operator of tape record-

ing equipment is not involved in the auditory reception and reporting of testimony. The tape recorder performs these functions. Hence the application of rule 28(c) to require an independent operator and transcriber for tape recorded depostions would defeat the cost saving purposes of rule 30(b)(4), especially where, as here, adequate safeguards for both trustworthiness and accuracy have been provided in the petitioners' proposed order.

required to record such exchanges in a manner which permits perfect transcriptions?" *Champagne v. Hygrade Food Products, Inc., supra* at 673–74. The potential of rule 30(b)(4) for achieving a significant reduction in the costs of litigation should not be skewed by a rigid adherence to expensive and seldom attainable standards of perfection.

In summary, we conclude that the petitioners' proposed order provides the type of safeguards for accuracy and trustworthiness intended by C.R.C.P. 30(b)(4). The respondent court abused its discretion in denying the motion for tape recorded depositions. The rule is made absolute and the cause is remanded to the district court with directions to grant the petitioners' motion.