**The PEOPLE of the State of Colorado, Petitioner,**

v.

**The DISTRICT COURT OF the 2ND JUDICIAL DISTRICT and Hon. Paul A. Markson, one of the judges thereof, Respondents.**

**No. 83SA104.**

Supreme Court of Colorado.

June 6, 1983.

Norman S. Early, Jr., Dist. Atty., O. Otto Moore, Asst. Dist. Atty., Brooke Wunnicke, Chief Appellate Deputy Dist. Atty., Denver, for petitioner.

Richard I. Zuber, Denver, for respondents.

NEIGHBORS, Justice.

The People filed this original proceeding pursuant to C.A.R. 21 requesting that this

1. Section 18–4–203, C.R.S.1973 (1982 Supp. & 1978 Repl.Vol. 8).

2. Section 18–4–304, C.R.S.1973 (1982 Supp. to 1978 Repl.Vol. 8).

court prohibit the respondent judge from enforcing his order excluding the People's fingerprint evidence at trial in a criminal case pending in the Denver District Court. We issued a rule to show cause. We now discharge the rule.

I.

Donald Angelo Clark (Clark) was charged in a complaint/information filed in the Denver County Court on June 2, 1982, with three felonies: second-degree burglary,[1] robbery of the elderly or handicapped,[2] and theft over $200.[3] The charges arise from the burglary of the residence of the 87-year-old female victim on May 26 or 27, 1982.

Clark was bound over to the district court for trial following a preliminary hearing held in the county court. On June 29, 1982, Clark appeared before the respondent judge and entered a plea of not guilty. Trial was set for August 9, 1982.

On July 27, 1982, the public defender's motion to withdraw as counsel for Clark was granted and the case was continued for the appointment of new counsel until August 5, 1982. On that date, the case was continued until August 6, 1982, because the attorney selected to represent Clark declined to accept the appointment. On August 6, 1982, present defense counsel was appointed. The court vacated the original trial date of August 9, 1982, and reset the case for trial beginning on September 20, 1982.

On September 20, 1982, Clark filed a motion to continue the jury trial and waived his right to a speedy trial. The district attorney did not object to the motion. The motion for a continuance was granted and the case was reset for a jury trial to commence on November 8, 1982.

The parties appeared for trial on November 8. The respondent judge was in trial on

3. Section 18–4–401, C.R.S.1973 (1978 Repl.Vol. 8).

another case and no other judge was available to try Clark's case. Therefore, the respondent judge vacated the jury trial on his own motion and reset the trial for January 31, 1983.

The jury trial on the three charges began on January 31, 1983. In his opening statement, the district attorney told the jury that the defendant would be connected to the burglary of the victim's residence by fingerprint evidence. Defense counsel also discussed this fingerprint evidence during his opening statement. The evidence in dispute consists of a partial latent fingerprint found on a jewelry box in the victim's bedroom by officers from the Denver Police Department Crime Laboratory. The fingerprint was identified as that of Clark.

Ten witnesses were called to the witness stand and testified. A primary goal of the prosecution was to establish that the defendant had touched the jewelry box. The district attorney attempted to establish this fact by showing that the latent print found on the jewelry box was identical to the known inked prints of Clark.

Officers Kerber and McKinnies testified that they found the latent print in the victim's bedroom on May 27, 1982. Each identified Exhibit B as the latent print which had been recovered. Detective Vaughn Ballard testified and was qualified as an expert witness in the field of fingerprint identification. Ballard completed the chain of custody for Exhibit B when he testified that he used the exhibit in comparing it with the known inked prints of the defendant shown in Exhibit E and concluded that the prints were identical. Exhibit E is an enlargement or blowup of the latent prints and Clark's inked prints. It is unclear from the record whether the inked prints in the exhibit were taken from Clark's fingerprint card of an earlier arrest or from the card containing his prints obtained after his arrest on the present charges. The district attorney then offered the exhibit into evidence. Defense counsel conducted a voir dire examination of Bal-

lard with regard to Exhibit E. On both direct and voir dire examinations, Ballard testified that he or Detective Arko, or both, took the inked prints of Clark when he was arrested. However, Ballard admitted that he did not know the precise date when he and/or Arko obtained the inked prints shown in Exhibit E which provided the basis for his opinion. The respondent judge sustained an objection to the admission of Exhibit E, but granted the district attorney's request to recall Ballard the next day to lay an adequate foundation for the admission of the exhibit. The court then recessed for the day.

The following morning, the district attorney informed the judge that neither Ballard nor Arko had rolled Clark's fingerprints and that the earlier testimony of Ballard was a "misstatement." The district attorney filed a motion for non-testimonial identification pursuant to Crim.P. 41.1 requesting a court order authorizing Ballard to obtain Clark's fingerprints during trial. The trial court denied the motion on the ground it was not timely filed. The respondent judge also pointed out that he had entered a discovery order on June 29, 1982, in which he granted the prosecution the right to obtain Clark's fingerprints at any time on written notice by letter to defense counsel. The trial court also found that Clark had been continuously in the custody of either the Denver County Sheriff or the Department of Corrections since his arrest. The district attorney did not make a formal motion to endorse additional witnesses. However, the district attorney informed the court that he assumed that a motion to endorse the witness who actually took Clark's fingerprints would not be granted.

The respondent judge, finding manifest necessity in accordance with *People v. Baca*, 193 Colo. 9, 562 P.2d 411 (1977), declared a mistrial on his own motion for two stated reasons. First, evidence of Clark's prior criminality had been improperly placed before the jury during the testimony about the fingerprints.[4] Second, the fingerprint

4. The evidence to which the respondent judge was referring was testimony that Clark's fin-

gerprints were on file at the Denver Police Department prior to his arrest for the present

evidence referred to repeatedly by the district attorney and defense counsel in their opening statements would not be introduced at trial. The judge believed that a cautionary instruction would be inadequate under the circumstances. As a sanction, the respondent judge ordered that no fingerprint evidence could be introduced at a second trial. In response to the trial court's ruling, Clark's attorney stated:

> "The Defendant, as long as the Court has in fact made that limitation that the District Attorney in a retrial of this matter cannot rely on the fingerprint evidence at all—"

At that point in the proceedings, defense counsel was interrupted by the district attorney with an argument that evidence of Clark's inked prints could be admitted by laying a proper foundation through the endorsed witnesses pursuant to the Colorado Rules of Evidence. The case was then continued until 1:30 p.m. when further arguments were made. At that time, the court rejected the fingerprint evidence under C.R.E. 406, 803(6) and 803(8). The respondent judge reaffirmed his previous orders granting the mistrial and ordering that there "be no mention whatsoever of the recovery of a fingerprint at this crime scene or any attempt to match that fingerprint with the defendant."

The district attorney filed a motion for reconsideration. Specifically, the People requested that they be permitted to obtain inked fingerprints from Clark and to endorse an additional witness. The People also urged the respondent judge to reconsider his ruling that the existing fingerprint evidence was not admissible under C.R.E. 803(8). Arguments were again presented. Defense counsel informed the court that he would have objected to the mistrial if the sanctions had not been imposed.

After the respondent judge denied the motion for reconsideration, the People filed this original proceeding in which they ask this court to vacate the evidence exclusion order and to further order that new fingerprints of Clark be obtained or that additional witnesses may be endorsed.

## II.

The precise issues relevant to resolution of this original proceeding may best be framed by identifying those questions which need not be answered. The issues not before us are: (1) Did the respondent judge err in his ruling on the People's motion under Crim.P. 41.1 to obtain Clark's fingerprints during trial?[5] (2) Were the evidentiary rulings of the respondent judge on the fingerprint evidence correct? (3) Did the respondent judge properly declare a mistrial? (4) Did Clark waive any objection to the mistrial in reliance on the respondent judge's announcement of the sanctions he would impose on the district attorney at the second trial?

The present state of the proceedings in the trial court is that the respondent judge declared a mistrial because of the inability of the People to offer admissible evidence on the material issue of fingerprints which had been discussed during opening statements. As a sanction, the respondent judge has entered an order prohibiting the district attorney from using any fingerprint evidence at trial. Two issues are thus presented: First, is this a proper case for an original proceeding under C.A.R. 21? Second, did the respondent judge abuse his discretion in ordering the sanction imposed on the People?

### A.

▉ We turn first to the propriety of considering in an original proceeding the issue of whether a trial court abused its

offense and that Ballard had been instructed by Sergeant Jeffries, a burglary detective, to compare the latent print found at the crime scene with the fingerprints of Clark. *See People v. Lucero,* 200 Colo. 335, 615 P.2d 660 (1980). Defense counsel did not make a contemporaneous objection to the evidence.

5. We note that once judicial proceedings against a defendant have been initiated, a prosecution request for nontestimonial identification evidence is governed by Crim.P. 16II(a)(1) which incorporates by reference Crim.P. 41.-1(h)(2).

discretion in ordering the exclusion of prosecution evidence as a sanction. Relief in the nature of prohibition is a proper remedy in cases where the trial court is proceeding without or in excess of its jurisdiction, or has abused its discretion in exercising its functions over matters within its authority to decide. *People in the Interest of P.N.*, 663 P.2d 253 (Colo.1983); *People v. Gallagher*, 194 Colo. 121, 570 P.2d 236 (1977); *Colorado Springs v. District Court*, 184 Colo. 177, 519 P.2d 325 (1974).

■■■■ The source of this court's original jurisdiction is article VI, section 3 of the Colorado Constitution. Our exercise of original jurisdiction is discretionary and is governed by the facts and circumstances of each case. *Sanchez v. District Court*, 624 P.2d 1314 (Colo.1981); *Shore v. District Court*, 127 Colo. 487, 258 P.2d 485 (1953). We have exercised original jurisdiction to review pretrial orders entered by trial courts which "will place a party at a significant disadvantage in litigating the merits of the controversy." *Sanchez v. District Court*, 624 P.2d at 1316. *See also Varner v. District Court*, 618 P.2d 1388 (Colo.1980). Likewise, original jurisdiction under C.A.R. 21 has been invoked where appellate remedies are inadequate. *Marks v. District Court*, 643 P.2d 741 (Colo.1982), *cert. denied*, —— U.S. ——, 102 S.Ct. 3486, 73 L.Ed.2d 1368 (1982); *Margolis v. District Court*, 638 P.2d 297 (Colo.1981); *People v. District Court*, 623 P.2d 55 (Colo.1981); *Coquina Oil Corp. v. District Court*, 623 P.2d 40 (Colo. 1981). In this case, the People's ability to litigate the issues has been significantly impaired by the order preventing their use of fingerprint evidence and appellate review of the order is an inadequate remedy. If the fingerprint evidence is excluded at trial and Clark is acquitted of the charges, jeopardy will have attached and he cannot be retried, although the order of exclusion could be challenged on appeal by the district attorney. *People v. District Court, supra.*

We have considered in original proceedings pretrial rulings on issues involving the admissibility of evidence and the imposition of sanctions against the prosecution in criminal cases. *See, e.g., People v. District Court, supra* (the trial court erroneously granted the defendant's motion *in limine* in which the defendant requested permission to offer evidence that the order revoking his driver's license was invalid); and *People ex rel. Gallagher v. District Court*, 656 P.2d 1287 (Colo.1983) (the trial court reduced the charge against the defendant from first-degree murder to second-degree murder as a remedy for the loss of material evidence by the prosecution). Accordingly, we conclude that the People's claims are properly before us for a decision on the merits in this original proceeding.

## B.

The district attorney made the following statement at the hearing on the motion for reconsideration:

"MR. LYNCH: Your Honor, there is one additional matter I would like to spread on the record just to make sure that this is understood and was understood by Counsel and the Court. I think it is implicit in all that has happened, but I would like to state it and see if Counsel has my understanding as to the facts.

"The reason for the failure to endorse either the person who took the print that was the basis of the inked print compared with the Defendant was because Detective Ballard had explicitly told me when I was preparing his testimony for trial that he had done so, and not only that, he testified in court that he had done so, but I want the record to be clear that the reason I did not endorse these people is because in very early pretrial interview and consistently throughout all my pretrial interviews with Detective Ballard, he told me that he and John Arko had rolled the Defendant's prints and my failure to endorse was based upon those representations.

"I think that that is clear, but I would like to see if that's the Court's understanding.

"THE COURT: That's the Court's understanding of the status."

**252**

The respondent judge found that the "inadvertence" of the district attorney caused the mistrial when he stated, "purely on the basis that because of their inadvertence, not because of malfeasance but inadvertence, they caused a mistrial." The respondent judge also found that the People failed to obtain the fingerprints of Clark "for a period of approximately nine months, two or three trial settings and into the middle of trial, and into the middle of a witness who is supposed to deal with fingerprints before asking to do this."

The respondent judge determined that Clark had been prejudiced by the district attorney's failure to properly prepare the case which resulted in the necessity of declaring a mistrial. The judge stated:

"The Defendant had a trial, it was going in an orderly fashion, a jury had been selected to which the Defendant had no objection, and he was entitled to proceed with the trial with the jurors that he had selected for trial. But for the inadvertence of the Prosecution, the Defendant would have been able to proceed to conclusion; but for the inadvertence of the Prosecution, the Defendant is therefore prejudiced and having to delay his trial until today's date, with a new jury at a later time.

"The Court could not permit the Prosecution then to go ahead and do what they had not done prior to the original trial, to right their inadvertence at the cost of the Defendant of giving up his original trial. The Court has employed a sanction upon the Prosecution, therefore, as it relates both in being able to roll the Defendant's fingerprints and in being able to endorse a witness in a very untimely fashion, originally during the course of the middle of a trial, and second of all, during the period of time between the mistrial and the resetting of trial. The Court is employing a sanction which in effect suppresses the fingerprint evidence. The Court cannot authorize the Prosecution to either endorse this additional witness for new trial or for rolling the prints because the Defendant is the one who is prejudiced by that in that he has given up his

original trial and the jury that he selected."

■ A trial judge has broad discretion in considering motions to endorse additional witnesses and fashioning remedies for violations of a discovery order under Crim.P. 16(g). The respondent judge did not abuse his discretion in entering the order which prevents the use of the fingerprint evidence for two reasons: First, motions for the late endorsement of additional witnesses are addressed to the sound discretion of the trial court. *People v. Adler,* 629 P.2d 569 (Colo. 1981); *People v. Bailey,* 191 Colo. 366, 552 P.2d 1014 (1976). Second, the extensive discovery order entered by the respondent judge provided that the district attorney had an obligation to disclose to defense counsel all material and information in the possession or control of the district attorney and the Denver Police Department.

The order further provided that all information concerning the procedures used to identify the defendant were required to be disclosed to defense counsel. The order specifically stated that if either party failed to comply with the discovery order, the court could prohibit that party from introducing into evidence the material not disclosed or "enter such other order as it deems just under the circumstances." In addition, the order granted the district attorney the right to obtain Clark's fingerprints at any time upon giving letter notice to defense counsel.

■ The district attorney violated the discovery order. The fingerprint card showing the name of the officer who obtained the ink prints of Clark was in the possession of the Denver Police Department and was not disclosed to defense counsel. Knowledge of the existence of the card is imputed to the district attorney by the terms of the discovery order itself and as a matter of law. *Ortega v. People,* 162 Colo. 358, 426 P.2d 180 (1967); *People v. Lucero,* 623 P.2d 424 (Colo.App.1980). Moreover, the district attorney failed to obtain the fingerprints of the defendant when he had ample opportunity pursuant to the terms of the order. Preclusion of the use of evi-

dence is a proper remedy to assure compliance with a discovery order. *People v. Patterson*, 189 Colo. 451, 541 P.2d 894 (1975); *see United States v. Nobles*, 422 U.S. 225, 95 S.Ct. 2160, 45 L.Ed.2d 141 (1975).

An order preventing the district attorney from using certain evidence is a harsh sanction. However, under the unique facts of this case, there has been no showing that the respondent judge abused his discretion in excluding the fingerprint evidence at trial. It is not our role in an original proceeding to substitute our judgment for that of the respondent judge. *Chicago Cutlery v. District Court*, 194 Colo. 10, 568 P.2d 464 (1977). The effect of the exclusion order is simply to maintain the status quo which existed before the mistrial was declared, *i.e.*, the fingerprint evidence was unavailable.

The rule is discharged.

RULE DISCHARGED.