**SAFECO OF AMERICA, Plaintiff,**

v.

**Robert RAWSTRON and Carla Rawstron, Defendants.**

**No. CV 96–5139–KMW(AJWX).**

United States District Court,
C.D. California.

May 18, 1998.

Raymond H. Goettsch, LaTorraca & Goettsch, Long Beach, CA, for plaintiff.

Jeffrey F. Sax, Parker Mills & Patel, Los Angeles, CA, for Robert Rawstron.

David L. Brandon, Brandon & Hilton, Los Angeles, CA, for Carla Rawstron.

### ORDER

WISTRICH, United States Magistrate Judge.

Before the Court is the motion of defendants Robert Rawstron and Carla Rawstron to compel plaintiff Safeco Insurance Company of America to provide further responses to (1) defendants' first request for production of documents, (2) defendants' second request for production of documents, and (3) defendants' first set of interrogatories. The Court has considered the papers filed by the parties and the arguments made by counsel during the hearing on the motion.

For the most part, defendants' motion presents a rather mundane discovery dispute. One aspect of it, however, possesses interest, and appears to present a question of first impression. The issue of interest is whether an interrogatory which asks for the basis for the denial of each request for admission comprising a set of requests for admissions constitutes a single interrogatory or multiple interrogatories for the purposes of the numerical limit contained in Rule 33(a) of the Federal Rules of Civil Procedure. Neither plaintiff nor defendants have cited any case deciding the issue.

### Defendants' First Set of Interrogatories.

Defendants served a set of requests for admissions accompanied by a set of interrogatories. At issue are three interrogatories relating to plaintiff's responses to defendants' requests for admissions, not plaintiff's responses to defendants' requests for admissions themselves. Interrogatories 10, 11 and 12 ask plaintiff to state every fact, identify every document, and identify every witness which supports plaintiff's response to each request for admission which was not unqualifiedly admitted. Plaintiff denied at least some of the underlying requests for admissions, including 2, 10, 11 and 12, and provided some information regarding those denials in response to interrogatories 10–12.

It is not unusual for a party to serve a set of requests for admissions accompanied by a set of interrogatories, and for the set of interrogatories to include one or more interrogatories seeking disclosure of the basis for each response to any request for admission which was not admitted without qualification. Of this genre, the interrogatories served by defendants in this case are typical:

"10. For each of YOUR responses to the Requests for Admissions served upon YOU concurrently with these interrogatories that was not an unqualified admission, state in detail every fact which supports YOUR response.

11. For each of YOUR responses to the Requests for Admissions served upon YOU concurrently with these interrogatories that was not an unqualified admission, IDENTIFY every DOCUMENT which supports YOUR response.

12. For each of YOUR responses to the Requests for Admissions served upon YOU concurrently with these interrogatories that was not an unqualified admission, IDENTIFY every witness with knowledge which supports YOUR response."[1]

Plaintiff objected to interrogatories 11 and 12 on the ground that because interrogatories 10–12 contained twelve separate subparts, one for each of the twelve requests comprising defendants' set of requests for admissions, the total number of interrogatories served by defendants exceeded the numerical limit imposed by Rule 33(a). The question is whether that objection was warranted.

Rule 33(a) provides in part:

"Without leave of court or written stipulation, any party may serve upon any other party written interrogatories, not exceeding 25 in number including all discrete subparts...."

The numerical limit was added in 1993. Before then, courts acknowledged that "sheer numerosity is not an objection." *Compagnie Francaise d'Assurance Pour le Commerce Exterieur,* 105 F.R.D. 16, 42 (S.D.N.Y.1984). As the Advisory Committee explained, "[t]he purpose of this revision is to reduce the frequency and increase the efficiency of interrogatory practice." *See* Advisory Committee Note to 1993 Amendment to Fed. R.Civ.P. 33, 146 F.R.D. 675, 675 (1993). The amendment was based upon a recognition that, although interrogatories may be a valuable discovery tool, "the device can be costly and may be used as a means of harassment...." Advisory Committee Note, 146 F.R.D. at 675. "The aim [of the numerical limit] is not to prevent needed discovery, but to provide judicial scrutiny before parties make potentially excessive use of this discovery device." Advisory Committee Note, 146 F.R.D. at 676.

One issue that has arisen in implementing the numerical limit contained in Rule 33(a) is how interrogatories should be counted.[2] In particular, although Rule 33(a) states that "discrete subparts" should be counted as separate interrogatories, it does not define that term.

Interrogatories often contain subparts. Some are explicit and separately numbered or lettered, while others are implicit and not separately numbered or lettered. Extensive use of subparts, whether explicit or implicit, could defeat the purposes of the numerical limit contained in Rule 33(a) by rendering it meaningless, unless each subpart counts as a separate interrogatory. On the other hand, if all subparts count as separate interrogatories, the use of interrogatories might be unduly restricted or requests for increases in the numerical limit might become automatic. *See Ginn v. Gemini, Inc.* 137 F.R.D. 320, 322 (D.Nev.1991) (suggesting that this approach "could too quickly exhaust the propounding party's supply of interrogatories, and unnecessarily cramp the party's fact–gathering ability").

The Advisory Committee addressed this issue and provided some guidance as to when subparts should and should not count as separate interrogatories.

"Each party is allowed to serve 25 interrogatories upon any other party, but must secure leave of court (or stipulation from the opposing party) to serve a larger number. Parties cannot evade this presumptive limitation through the device of joining as 'subparts' questions that seek information about discrete separate subjects. However, a question asking about communications of a particular type should be treated as a single interrogatory even though it requests that the time, place, persons present, and contents be stated separately for each such communication."

---

1. For the purposes of this motion, the Court construes the terms "you" and "your" as used in defendants' discovery requests to refer to the plaintiff in this action, namely, Safeco Insurance Company of America, rather than to the apparently non-existent entity "Safeco Insurance Company" mistakenly named by defendants.

2. The same issue occasionally arose prior to the 1993 amendment when some courts, either by local rule or by order, imposed limits on the number of interrogatories that could be served, but it has been raised with increasing frequency since the 1993 amendment.

Advisory Committee Note, 146 F.R.D. at 675–676.

A respected commentator has elaborated on that statement as follows:

"[I]t would appear that an interrogatory containing subparts directed at eliciting details concerning the common theme should be considered a single question, although the breadth of an area inquired about may be disputable. On the other hand, an interrogatory with subparts inquiring into discrete areas is more likely to be counted as more than one for purposes of the limitation."

8A Charles A. Wright, Arthur R. Miller & Richard L. Marcus, Federal Practice and Procedure § 2168.1, at 261 (2d ed. 1994).

■ One question that is easily answered is whether subparts must be separately numbered or lettered to count as multiple interrogatories. The better view is that they need not be, or any party could easily circumvent the rule simply by eliminating the separate numbering or lettering of the subparts. *See, e.g., Prochaska & Associates v. Merrill Lynch, Pierce, Fenner & Smith, Inc.,* 155 F.R.D. 189, 191 (D.Neb.1993) (holding that "[n]ot numbering the sub-parts of interrogatories does not change the fact that, if the interrogatories require discrete pieces of information, those interrogatories are to be counted as if the sub-parts were specifically itemized.").

■ The more difficult question is when differences in the information sought should render subparts "discrete." Perhaps understandably, the answers supplied by the courts have not been entirely consistent. Some courts have held that if the subparts are "subsumed within" or "necessarily related to" the "primary question," they should be counted as one interrogatory rather than as multiple interrogatories. *See, e.g., Ginn,* 137 F.R.D. at 321 (stating that "interrogatory subparts are to be counted as part of but one interrogatory for the purpose of [our local rule] if they are logically or factually subsumed within and necessarily related to the primary question."); *Clark v. Burlington Northern Railroad,* 112 F.R.D. 117, 120 (N.D.Miss.1986) (holding that "an interrogatory is to be counted as but a single question

for purposes of [our local rule], even though it may call for an answer containing several separate bits of information, if there is a direct relationship between the various bits of information called for. On the other hand, interrogative sentences or phrases which are not directly related in subject matter, even though not separately enumerated or numbered by the interrogating party, will be counted as separate questions."; applying a local rule which limited interrogatories to 30, and which also provided that "any subpart of a question shall be counted as a question"), quoting *Holcombe v. Southern Towing Co.,* No. D.C. 81–167–LS–O, Order of March 17, 1982, at 4 (N.D.Miss.1982); *Myers v. United States Paint Co.,* 116 F.R.D. 165, 165–66 (D.Mass.1987) (holding that subparts need not be counted as separate interrogatories if they are a "logical extension of the basic interrogatory."). By contrast, other courts have held that subparts always should be counted. *See, e.g., Aetna Casualty & Surety Co. v. W.W. Grainger, Inc.,* 170 F.R.D. 454, 454 (E.D.Wis.1997) (rejecting the contention that, in applying a local rule stating that "[t]he 15 permissible interrogatories may not be expanded by the creative use of subparts," subparts need not be counted if they are a "logical extension" of or "directly related" to a basic interrogatory); *Valdez v. Ford Motor Co.,* 134 F.R.D. 296, 298 (D.Nev.1991) (holding that local rule limiting interrogatories to "40 including subparts" "requires that every part of an interrogatory be counted and subject to the limitation of 40 ... even when a subpart relates to the main interrogatory."). Although these cases were applying local rules, applying the numerical limit contained in Rule 33(a) is essentially the same endeavor.

Of the two lines of pre-amendment cases applying numerical limits contained in local rules, the former approach seems more consistent with the spirit of the numerical limit contained in Rule 33(a) than does the latter. By modifying the term "subparts" with the term "discrete," and by providing the guidance it did in its interpretive note accompanying the 1993 amendment to Rule 33, the Advisory Committee was likely indicating a preference for the more flexible approach

exhibited in *Ginn* and *Clark,* rather than the more rigid approach reflected in *Aetna* and *Valdez.* Although this approach possesses the benefit of flexibility, that benefit comes at a cost. The lack of a clear and easily applied rule about how subparts should be counted leads to disagreements between counsel and costly motions to compel responses.

In the only case to decide the issue based on Rule 33 since the 1993 amendment to Rule 33(a) went into effect, the court in *Kendall v. GES Exposition Services, Inc.,* 174 F.R.D. 684 (D.Nev.1997), followed *Ginn* and construed the term "discrete subparts" as meaning that "interrogatory subparts are to be counted as one interrogatory ... if they are logically or factually subsumed within and necessarily related to the primary question." *Kendall,* 174 F.R.D. at 685, quoting *Ginn,* 137 F.R.D. at 322. As the court recognized in *Kendall,* however, such statements provide little guidance because it is still necessary to address the question whether a subpart is "logically or factually subsumed within and necessarily related to the primary question." The court in *Kendall* then went on to explain:

> "Probably the best test of whether subsequent questions, within a single interrogatory, are subsumed and related, is to examine whether the first question is primary and subsequent questions are secondary to the primary question. Or, can the subsequent question stand alone? Is it independent of the first question? Genuine subparts should not be counted as separate interrogatories. However, discrete or separate questions should be counted as separate interrogatories, notwithstanding [that] they are joined by a conjunctive word and may be related."

*Kendall,* 174 F.R.D. at 685. Unfortunately, despite heroic effort, this formula also falls short of a bright-line test.

▉▉▉▉ Consideration of the nature and purpose of requests for admissions suggests the manner in which the narrow issue raised by defendants' motion should be resolved. "The purpose of Rule 36(a) is to expedite trial by establishing certain material facts as true and thus narrowing the range of issues for trial." *Asea, Inc. v. Southern Pacific Transportation Co.,* 669 F.2d 1242, 1245 (9th Cir.1981); *see* Advisory Committee Note to 1970 Amendment to Fed.R.Civ.P. 36, 48 F.R.D. 531–532 (1970) ("Rule 36 serves two vital purposes, both of which are designed to reduce trial time. Admissions are sought, first to facilitate proof with respect to issues that cannot be eliminated from the case, and secondly, to narrow the issues by eliminating those that can be."). Their goal "is to eliminate from the trial matters as to which there is no genuine dispute." *People of State of California v. The Jules Fribourg,* 19 F.R.D. 432, 436 (N.D.Cal.1955). Therefore, requests for admissions are not principally discovery devices, *see* 8A Charles Alan Wright, Arthur R. Miller & Richard L. Marcus, § 2252, at 524–525 ("Strictly speaking Rule 36 is not a discovery procedure at all, since it presupposes that the party proceeding under it knows the facts or has the document and merely wishes its opponent to concede their genuineness. A party who desires to discover what the facts are should resort to other discovery rules rather than Rule 36.") (footnotes omitted), and they "are not to be treated as substitutes for discovery processes to uncover evidence...." *The Jules Fribourg,* 19 F.R.D. at 436; *see* 7 Moore's Federal Practices § 36.02[2] (3d ed. 1991) ("Because Rule 36 was not designed to elicit information, to obtain discovery of the existence of facts, or [to] obtain production of documents, requests for admission should not be used as a method of discovery for those purposes.") (footnote omitted). Allowing service of an interrogatory which requests disclosure of all of the information on which the denials of each of 50 requests for admissions were based, however, essentially transforms each request for admission into an interrogatory. This is not the purpose requests for admissions were intended to serve, and because Rule 36 imposes no numerical limit on the number of requests for admissions that may be served, condoning such a practice would circumvent the numerical limit contained in Rule 33(a). *See generally, In re Olympia Holding Corp.,* 189 B.R. 846, 853 (Bkrtcy. N.D.Fla.1995) ("Requests for admissions and interrogatories are not interchangeable procedures ... Utilizing interrogatories disguised as requests for admissions in an at-

tempt to circumvent a local rule limiting the number of interrogatories is an abuse of the discovery process.") (citations omitted).

■ In addition, as a general matter, requests for admissions deal with discrete or separate subjects. *See* Fed.R.Civ.P. 36(a) ("Each matter of which an admission is requested shall be separately set forth."). A set of requests for admissions may address a wide variety of disparate topics. For example, it may contain separate requests for an admission that a document is authentic, an admission that a meeting occurred on a specified date, an admission that the responding party received a document that was mailed to it, and an admission that an individual was acting as the agent of the responding party during a specified period of time. Each of those four requests for admissions is entirely independent of the others, is unrelated to the others, and is not subsumed within or inextricably intertwined with the others. One might be admitted and the others might be denied. Similarly, a set of requests for admissions might seek admissions as to the authenticity of 100 documents. The documents may deal with different topics, may have been created by different persons or entities, and may have been prepared on different dates. Each of those 100 requests for admission would address a subject matter discrete or separate from each of the others. Accordingly, an interrogatory that asks the responding party to state facts, identify witnesses, or identify documents supporting the denial of each request for admission contained in a set of requests for admissions usually should be construed as containing a subpart for each request for admission contained in the set.[3] Therefore, each of defendant's requests for admissions as to which a response to the three interrogatories would be required if the request were not admitted should be treated as a separately countable subpart of each of the three interrogatories.

This does not mean, of course, that every interrogatory of this sort **necessarily** contains a separate subpart for each underlying request for admission. In principle, the requests for admissions must be examined and the relationship among them must be determined. For example, perhaps an interrogatory seeking the basis for the denial of three requests for admissions which asked the responding party to admit that a specified meeting occurred on May 25, May 26, or May 27 should not be viewed as containing three subparts because each of the three requests for admissions concerned the same subject, that is, the date on which a specified meeting took place. Where the underlying requests for admissions concern different, separate, or discrete matters, however, the interrogatory should be viewed as containing a subpart for each request. As a practical matter, this will almost always be the case. *See, e.g., S.E.C. v. Micro–Moisture Controls*, 21 F.R.D. 164, 166 (S.D.N.Y.1957) ("It is well settled that requests for admissions ... are required to be simple and direct, and should be limited to singular relevant facts."). Therefore, although courts should be cautious about encrusting the rules of civil procedure with "interpretive barnacles", *see* Charles E. Clark, Special Problems Drafting and Interpreting Procedural Codes and Rules, 3 Vand. L.Rev. 493, 498 (1950), a strong presumption that each underlying request for admission constitutes a separately countable subpart should be adopted. Though it falls slightly short of constituting a bright-line test, such a presumption will tend to conserve litigants' resources by making it relatively clear what is and is not permitted, and will tend to avoid "sap[ping] the court's limited resources in order to resolve hypertechnical disputes." *Ginn*, 137 F.R.D. at 322.

Adopting such a rule should not unduly restrict access to needed information during discovery. Often, the basis for the denial of a request for admission is unimportant. For example, if an admission as to the authenticity of a document is sought, what the propounding party really wants to know whether it must be prepared to prove that the document is authentic at the time of trial, or whether the responding party will essentially stipulate that such effort will not be necessary. In this situation, preparation of a detailed account of the basis for the denial

---

3. The same general rule should apply to analogous interrogatories regarding responses to requests for admissions declining to admit allegations contained in a complaint or an answer.

would merely be a waste of everyone's time. The same can be said of many other matters that are properly the subject of requests for admissions. Occasionally, however the issue is significant and follow-up information is needed. If the subject of a request for admission is an important and disputed one, it may be well worth expending one of a limited number of interrogatories to learn the basis for the denial. In this situation, however, service of the request for admission was probably pointless, and service of an interrogatory alone probably would have been more efficient.

Defendants' contention that plaintiff was required to "set forth in detail an affirmative explanation of how it underwrites its homeowners' insurance policies, how it rates the aggregate risks, and how it separately determines the policy limits to permit [defendants] to evaluate whether the denial of the [request for admission] was in good faith and based upon what facts" confirms the soundness of this approach. When responding to requests for admissions, explanation generally is unnecessary. "The answer [to a request for admission] shall specifically deny the matter or set forth in detail the reasons why the answering party cannot truthfully admit or deny the matter." Fed.R.Civ.P. 36(a). "Each request for an admission should be phrased simply and directly so that it can be admitted or denied without explanation." 8A Wright, Miller & Marcus § 2258 at 546–547; *see United Coal Companies v. Powell Construction Co.*, 839 F.2d 958, 968 (3d Cir.1988) ("Rule 36 should not be used unless the statement of facts sought to be admitted is phrased so that it can be admitted or denied without explanation."). Explanation is only required if the party cannot truthfully admit or deny. By arguing that plaintiff must fully explain its business practices in responding to interrogatories 10–12, defendants are plainly attempting to convert requests for admissions into interrogatories. This would sidestep the numerical limit contained in Rule 33(a). "[E]fforts to use other devices such as requests for admissions to circumvent the limitation on number of interrogatories should not be sustained." 8A Wright, Miller & Marcus § 2168.1, at 12 (Supp.1997), citing *In re Olympia Holding Corp.*, 189 B.R.

at 853 (holding that instructions accompanying requests for admissions purporting to require the defendant to explain why any request that was not admitted could not be admitted improperly transformed the requests for admission into interrogatories because Rule 36 does not require a party to explain why a request was denied, but only why it cannot admit or deny the request).

Plaintiff also objected to defendants' interrogatories on the ground that they were unduly burdensome and oppressive. Because not all of defendants' interrogatories exceeded the numerical limit, it is necessary for the Court to address this objection as well.

■ One court has aptly described the problem presented by interrogatories of the type served by defendants, which purport to require a party to specify **all** facts, documents, and witnesses that support the denial of a statement or allegation of fact. As it explained in holding that such interrogatories placed an unreasonable burden on the responding party:

> "Part of that burden arises in this case by the characteristic common to these interrogatories for asking defendant to provide 'all' facts in support of its denials of allegations pled by plaintiff. To state 'all' facts in support of a negative proposition, of course, includes an inventory of evidence which defendant itself would offer at trial to refute the claims of plaintiff. Beyond that, however, it would further require defendant to provide essentially a review of facts and commentary to support its evaluation, if any, that the anticipated evidence of plaintiff as to each disputed paragraph of the complaint simply lacks weight or credibility. The request for 'all' facts, based not only upon knowledge, but also upon simply information and belief, adds a significant and reasonable burden to the task of the answering party."

*Lawrence v. First Kansas Bank & Trust Co.*, 169 F.R.D. 657, 663 (D.Kan.1996). This assessment is both accurate and applicable to the interrogatories served by defendants in this case. Plaintiff's objection that interrog-

atories 10–12 are unduly burdensome and oppressive is well taken.

Consideration of the requests for admissions confirms this impression. For example, request for admission 10 asks plaintiff to "[a]dmit that in YOUR underwriting process of the INSURANCE CONTRACT, YOU underwrite the following coverages separately from each other: dwelling, other structure, personal property, and loss of use. The term "insurance contract" is not defined in the materials the parties have presented to the Court, and defendants have not supplied the Court with the definition section, if any, contained in their set of requests for admissions. Therefore, it must be assumed that the term "insurance contract" is not limited to the particular contract issued to defendants, and that instead defendants are seeking an admission regarding plaintiff's underwriting of homeowners' policies generally. In addition, neither the requests for admissions nor the corresponding interrogatories contain any time limitation. Accordingly, every document contained in the files of any of plaintiff's other insureds that would tend to support plaintiff's implicit assertion that it does not determine limits of coverage for the listed coverages separately would have to be identified. Similarly, each of plaintiff's employees who participated in or possesses some information about the underwriting of any homeowner's policy in which the limit of coverage for the listed coverages was not determined separately, would have to be identified. Finally, with respect to the identification of facts, as the court suggested in *Lawrence*, the universe of potentially responsive information is almost endless.

Defendants' counsel should have considered these practical problems before serving such broad discovery requests, rather than waiting until the inevitable objections were received before trying to salvage the requests by limiting them to what is really needed.

Notwithstanding its objections, plaintiff also responded to portions of interrogatories 10 and 11. Since the interrogatories were objectionable, both because they violated the numerical limit contained in Rule 33(a) and because they were unduly burdensome and oppressive, the Court has no occasion to consider the adequacy of plaintiff's responses.

For the foregoing reasons, defendant's motion as to interrogatories 10–12 is **denied.** The other aspects of this motion are relatively routine.

**Defendants' First Request for Production.**

■ Requests 9 and 10 seek production of plaintiff's articles of incorporation and bylaws. The relevance of these documents is minimal, and collecting them for the entire period of several decades during which plaintiff has been in existence would be unduly burdensome, at least in light of the likely benefit of their production. *See* Fed.R.Civ.P. 26(b)(2)(iii). Therefore, as to requests 9 and 10, defendants' motion is **granted,** but the time period is limited to July 1, 1996 to the present.

Requests 16–19 seek production of all documents which plaintiff filed with the California or Washington Secretary of State in Department of Incorporations during the time period 1992 through the present. The documents sought possess minimal relevance. Contrary to defendants' suggestion, production of the documents does not appear to be necessary "to make sure that all parties are before the court." Moreover, insofar as punitive damages are concerned, the information can be obtained in a more efficient manner. Plaintiff is directed to produce complete financial statements for its most recent fiscal year, and to provide such updated quarterly or annual financial statements as it may prepare in the ordinary course of business through and including June 30, 1998, no later than fourteen (14) days prior to trial. Therefore, as to requests 16–19, defendants' motion is **granted in part and denied in part.**

Request 27 seeks production of all communications between plaintiff and any other insurer which refer to defendants during the time period January 1, 1992 to the present. Such documents should be readily identifiable, limited in number, and are relevant to the subject matter of this action. To take only of the most obvious example, documents created on or after the date plaintiff filed this

action may describe plaintiff's conduct before plaintiff filed this action. Therefore, as to request 27, defendants' motion is **granted.** Plaintiff is directed to produce all unprivileged documents responsive to this request, regardless of whether they were created before or after this action was filed. If plaintiff withholds any responsive documents from production on the ground of any privilege or protection, plaintiff shall comply with Fed. R.Civ.P. 26(b)(5). *See generally, Miller v. Pancucci,* 141 F.R.D. 292, 302 (C.D.Cal. 1992). Plaintiff contends that this aspect of defendants' motion is moot because plaintiff represents that it already has produced all documents responsive to this request. If so, service of a supplemental verified written response expressly so stating will suffice to constitute compliance.

**Defendants' Second Request for Production.**

Request 32 seeks production of items placed on the agenda of plaintiff's board of directors' meetings referring to homeowners policies for two years prior to the date on which defendants first purchased an insurance contract from plaintiff to the present. As to request 32, defendants' motion is **granted in part and denied in part.** The time period is limited to January 1, 1992 to September 30, 1996. All agenda items concerning other subjects may be redacted.

As to all of the respects in which defendants' motion was granted, plaintiff shall provide additional written responses, produce documents, or serve a privilege log within eleven (11) days, unless otherwise indicated.

**IT IS SO ORDERED.**