Karen **LEAFFER** and Steven
Leaffer, Plaintiffs,

v.

Gerald V. **ZARLENGO**; Cristee Locke
Offerdahl; and Midtown Obstetrics
& Gynecology P.C., Defendants.

No. 01SA324.

Supreme Court of Colorado.

April 15, 2002.

Holland & Hart, LLP, A. Bruce Jones, Marcy G. Glenn, Denver, Colorado, Attorneys for Plaintiffs.

Johnson, McConaty & Sargent, P.C., Brian G. McConaty, Catherine O'Brien–Crum, Glendale, Colorado, Attorneys for Respondents.

Justice RICE delivered the Opinion of the Court.

The petitioners-plaintiffs in this case, Karen and Steven Leaffer, (Petitioners), initiated this original proceeding pursuant to C.A.R. 21, seeking relief from a trial court order denying their motion to compel the respondent-defendants, Gerald V. Zarlengo, Cristee Locke Offerdahl, and Midtown Obstetrics & Gynecology, P.C., (Respondents), to respond to interrogatories and to produce Dr. Zarlengo's appointment calendar. In a one sentence order, the trial court summarily denied Petitioners' motion without explanation. Thus, the trial court appears to have accepted Respondents' position (1) that they were not required to answer all of Petitioners' non-pattern interrogatories because they included subparts that Respondents were entitled to treat as separate interrogatories; and (2) that they were not required to produce a less-redacted version of Dr. Zarlengo's appointment calendar because only the information specifically related to Ms. Leaffer's visits is relevant, and therefore, it was appropriate for them to omit all other entries.

We issued a rule to show cause why mandamus should not issue to require the trial court to reverse its order denying Petitioners' motion to compel. We conclude that the trial court erred in summarily denying Petitioners' motion to compel Respondents to answer the interrogatories and abused its discretion in similarly denying their motion to compel production of the appointment book. We hold that only discrete subparts of non-pattern interrogatories—and not those logically or factually subsumed within and necessarily related to the primary question—must be counted toward the interrogatory limit set forth in the Case Management Order. In addition, we adopt the test set forth in *Kendall v. GES Exposition Services., Inc.*, 174 F.R.D. 684 (D.Nev.1997) to aid courts in

distinguishing between discrete and non-discrete subparts. Applying the *Kendall* test to the non-pattern interrogatories at issue, we hold that none contain discrete subparts; therefore, each interrogatory counts as one question. Finally, we hold that the trial court abused its discretion in denying Petitioners' motion to compel production of Dr. Zarlengo's appointment calendar. Accordingly, we make the rule absolute.

## I. FACTS AND PROCEDURAL HISTORY

Petitioners brought this medical malpractice and wrongful death action in Denver District Court, contending that Respondents' care of Ms. Leaffer during her pregnancy was inadequate and caused physical and emotional harm to her and the death of her infant daughter.[1]

During the discovery stage of the litigation, Petitioners served sixteen non-pattern interrogatories, among other discovery demands, to Respondents. Respondents argued that each subpart of each interrogatory should be considered a separate question. Since the Case Management Order limited the number of non-pattern interrogatories to twenty, Respondents separated the interrogatories into sixty separate questions, renumbered them, and advised Petitioners to choose twenty of the sixty for Respondents to answer.[2]

Petitioners filed a motion to compel responses to their first set of written discovery with the trial court, arguing that pursuant to C.R.C.P. 33(a) only "discrete" subparts should be counted separately. Applying federal cases interpreting the federal counterpart to C.R.C.P. 33(a), Petitioners argued that discrete subparts are those that are not "logically or factually subsumed within and necessarily related to the primary question." Therefore, Petitioners contended, none of their interrogatories contained discrete subparts; rather, any subparts focused on issues that are logically and factually related to the primary question and therefore should not be counted separately. Petitioners also rejected Respondents' contention that C.R.C.P. 33(e) mandates that "any subpart"—whether discrete or not—constitutes a separate interrogatory, arguing that this interpretation of the Rule would lead to absurd results.

Respondents countered that C.R.C.P. 33(e) makes it clear that "any subpart to a non-pattern interrogatory" should be considered a separate interrogatory. Therefore, even if a subpart is related to the primary question, Respondents contended that each subpart must be considered a separate question.

In addition, as part of the initial disclosure process, Petitioners requested that Respondents produce copies of Dr. Zarlengo's office calendars and/or appointment books for August through December 1998 with patient names, other than Ms. Leaffer's, redacted. Respondents produced an appointment calendar with all information redacted except for entries specifically related to Ms. Leaffer.

Petitioners argued that the redactions were excessive and did not allow them to determine how many appointments and other activities Dr. Zarlengo had scheduled on the days Ms. Leaffer had appointments. Since the complaint alleged lack of continuity of care at Respondents' offices, Petitioners argued that information regarding or likely to lead to the discovery of evidence of Dr. Zarlengo's competing obligations is directly relevant to their malpractice claim.

Respondents contended that Dr. Zarlengo's office calendar is not relevant because the number of patients seen by him does not make it more or less probable that he was negligent in his failure to timely diagnose Ms. Leaffer's condition since he could not have detected cardiomyopathy prior to the congestive heart failure, which occurred

---

1. The trial court record in this case is not before us. We rely upon the briefs of the parties, the available pleadings and motions, and copies of the trial court's pre-trial orders for the facts of this case.

2. For example, Plaintiffs' Interrogatory No. 11 asked: "Describe your medical training specific to the conditions of cardiomyopathy, pre-eclampsia, and high-risk pregnancies (particularly involving twin pregnancies and advanced maternal age)." Respondents treated this interrogatory as three separate interrogatories directed to their training for each of the conditions in question.

about two weeks after Ms. Leaffer's last visit to Dr. Zarlengo. The trial court summarily denied Petitioners' motion to compel Respondents to answer the interrogatories and to produce the calendar, and this petition for mandamus followed.

This proceeding presents two issues: (1) whether the trial court erred by rejecting Petitioners' motion to compel Respondents to answer the non-pattern interrogatories; and (2) whether the trial court abused its discretion in denying Petitioners' motion to compel Respondents to produce Dr. Zarlengo's unredacted appointment books. Before we address the merits of the two issues raised in this petition for mandamus, we will discuss our exercise of original jurisdiction in this case.

## II. ORIGINAL JURISDICTION

Article VI, Section 3, of the Colorado Constitution is the source of this court's original jurisdiction.[3] C.A.R. 21 governs original proceedings and states in pertinent part:

> This rule applies only to the original jurisdiction of the Supreme Court to issue writs as provided in Section 3 of Article VI of the Colorado Constitution.... Relief under this rule is extraordinary in nature and is a matter wholly within the discretion of the Supreme Court. Such relief shall be granted only when no other adequate remedy, including relief available by appeal ... is available.

C.A.R. 21(a).

█ We have held that we may exercise our original jurisdiction when a pre-trial ruling places a party at a "significant disadvantage in litigating the merits of the controversy" and "conventional appellate remedies would prove inadequate." *Mitchell v. Wilmore*, 981 P.2d 172, 175 (Colo.1999) (internal quotation marks omitted). Matters of pretrial discovery are usually within the trial court's discretion; however, "they are not exempted from extraordinary relief under appropriate circumstances." *Sanchez v. Dist. Court*, 624 P.2d 1314, 1316–17 (Colo.

1981). Indeed, we have recognized numerous times that discovery rulings can have a significant effect on a party's ability to litigate the merits of the controversy, warranting the exercise of our original jurisdiction. *See Kerwin v. Dist. Court*, 649 P.2d 1086, 1088–89 (Colo.1982) (making rule absolute and directing production of party's ledgers where "an appeal would not provide petitioner with an adequate remedy"); *see also, e.g., Caldwell v. Dist. Court*, 644 P.2d 26, 30–31, 34 (Colo.1982) (making rule absolute and directing district court to reconsider motion to compel production of documents where the "denial of discovery ... would undercut the Caldwells' ability to prove the allegations of their complaint"); *Sanchez*, 624 P.2d at 1316–17 (reviewing deposition-related question because, among other things, absent mandamus review the discovery issue "may otherwise evade effective review").

In addition, we have exercised our original jurisdiction to address issues of "significant public importance which we have not yet examined." *City & County of Denver v. Dist. Court*, 939 P.2d 1353, 1361 (Colo.1997) (ruling that district court's denial of petitioner's motion to dismiss respondent's claims and request to stay proceedings raised issues of substantial public concern when parties had included alternative dispute resolution procedures in their contract); *Higgs v. Dist. Court*, 713 P.2d 840, 849 (Colo.1985) (addressing "significant issues" of first impression relating to nature and scope of prosecutorial immunity under 42 U.S.C. § 1983); *People v. Dist. Court*, 673 P.2d 991, 995 (Colo.1983) (holding that issues concerning nature of criminal proceedings were of significant public importance for a C.A.R. 21 proceeding); *Sanchez*, 624 P.2d at 1316–17 (holding that pretrial discovery issue was of significant public importance for an original proceeding).

█ The legal question of how subparts to interrogatories should be counted under C.R.C.P. 33 is a matter of significant importance and presents a matter of first impression. In addition, the trial court's order

---

**3.** Article VI, Section 3 provides in relevant part: "The supreme court shall have power to issue writs of ... mandamus ... as may be provided by rule of court with authority to hear and determine the same...." Colo. Const. art. VI, § 3.

denying Petitioner's motion to compel Respondents to answer the interrogatories and to produce Dr. Zarlengo's appointment book place Petitioners at a significant disadvantage in litigating the merits of their malpractice claim, and the conventional appeals process would not provide an adequate remedy since the issue will likely evade review in any eventual appeal. Therefore, we conclude that it is both necessary and appropriate for us to exercise our original jurisdiction.

## III. ANALYSIS OF C.R.C.P. 33 ISSUE

Initially, we address the question of whether, under C.R.C.P. 33, all subparts—or only discrete subparts—count toward the limit set forth in the Case Management Order.[4]

C.R.C.P. 33(a) provides in relevant part: "Any party may serve upon any other party written interrogatories, not exceeding the number, *including all discrete subparts*, set forth in the Case Management Order, to be answered by the party served...." C.R.C.P. 33(a) (emphasis added).

Conversely, C.R.C.P. 33(e) provides in relevant part: "Any pattern interrogatory and its subparts shall be counted as one interrogatory. *Any subpart* to a non-pattern interrogatory shall be considered as a separate interrogatory." C.R.C.P. 33(e) (emphasis added).[5]

■ Ordinarily, we afford a rule's [6] language its "commonly understood and accepted meaning." *Farmers Ins. Exch. v. Bill Boom Inc.*, 961 P.2d 465, 469 (Colo.1998). However, if certain provisions of the rule conflict with other provisions, we may rely on traditional rules of statutory construction to aid our analysis. *Martin v. People*, 27 P.3d 846, 851 (Colo.2001).

Here, the "any subpart" language in C.R.C.P. 33(e) conflicts with the "all discrete subparts" language of C.R.C.P. 33(a); while subsection (e) states that "any subpart" of a non-pattern interrogatory shall be considered a separate interrogatory, subsection (a) provides that only "discrete subparts" shall be counted as separate interrogatories. Therefore, we look to principles of statutory construction to analyze the rule.

■ A reviewing court must consider the rule as a whole and interpret it so as to give consistent, harmonious, and sensible effect to all its parts. *Martin*, 27 P.3d at 851. However, if it is impossible to reconcile all of the provisions of a rule, specific provisions typically prevail over general provisions. *See* § 2–4–205, 1 C.R.S. (2001) ("If a general provision conflicts with a special or local provision, it shall be construed, if possible, so that effect is given to both. If the conflict between the provisions is irreconcilable, the special or local provision prevails as an exception to the general provision, unless the general provision is the later adoption and the manifest intent is that the general provision prevail."); *see also Clifford F. MacEvoy Co., v. United States*, 322 U.S. 102, 107, 64 S.Ct. 890, 88 L.Ed. 1163 (1944) ("Specific terms prevail over the general in the same or another statute which otherwise might be controlling."); *Scholz v. Metro. Pathologists*, 851 P.2d 901, 909 (Colo.1993) ("As a general rule, a special or specific statutory provision prevails over a general provision unless the general provision is later in time and the legislature has manifested a clear intent that the general provision should prevail.").

■ In addition, courts should avoid interpretations "that render statutory provisions redundant and superfluous." *Colo. Comp. Ins. Auth. v. Jorgensen*, 992 P.2d

---

**4.** We, like the federal courts that have interpreted Fed.R.Civ.P. 33(a), recognize the importance of determining how subparts should be counted. On one hand, the extensive use of subparts could defeat the numerical limit imposed by the Case Management Order unless each subpart counts as a separate question; however, if each subpart counts as a separate interrogatory, then a party's fact-gathering ability might be unduly stymied or requests for an increase in the numerical limit might become automatic. *Nyfield v. Virgin Islands Tel. Corp.* 200 F.R.D. 246, 247 (D.Vi.2001);

*Williams v. Bd. of County Comm'rs of the Unified Gov't of Wyandotte County*, 192 F.R.D. 698, 701 (D.Kan.2000); *Safeco v. Rawstron*, 181 F.R.D. 441, 443 (C.D.Cal.1998).

**5.** The interrogatories at issue are non-pattern interrogatories.

**6.** Principles of statutory construction apply equally to construction of rules of procedure. *See Patterson v. Cronin*, 650 P.2d 531, 534 (Colo. 1982).

1156, 1163 (Colo.2000). Finally, in construing a rule, a court must avoid an interpretation that leads to an absurd result. *State v. Nieto,* 993 P.2d 493, 501 (Colo.2000).

An application of these rules of statutory construction dictates that C.R.C.P. 33 should be construed to mean that only discrete subparts of non-pattern interrogatories count toward the interrogatory limit in a Case Management Order.

■ Since it is impossible to reconcile C.R.C.P. 33(a) and C.R.C.P. 33(e), we first turn our attention to the rule that specific provisions prevail over general provisions. C.R.C.P. 33(a) contains the specific language "all discrete subparts"; C.R.C.P. 33(e), on the other hand, contains the more general term "any subpart." The only exception to the general rule that the specific provision controls over the more general provision is when the general provision is adopted later; however, in this case, both the amendment to subsection (a) adding the term "all discrete subparts" and the creation of subsection (e) occurred in 1994 and were adopted at the same time. Therefore, we determine that the more specific language in C.R.C.P. 33(a) controls and prevails over the general language in C.R.C.P. 33(e).

Furthermore, to read the word "discrete" out of C.R.C.P. 33(a) and require all subparts—whether discrete or not—to be counted separately would fail to give effect to the "all discrete subparts" language of C.R.C.P. 33(a) and render it superfluous. It is clear from the report of the Ad Hoc Committee on Rules Concerning Case Management, Disclosure/Discovery, and Motions Practice in Civil Litigation that their intent was to "retain[ ] a parallel to the Federal Rules where possible." Report and Recommendations of the Ad Hoc Committee on Rules Concerning Case Management, Disclosure/Discovery and Motions Practice in Civil Litigation 22 Colo. Law. 2165, 2166 (Oct.1993). Fed.R.Civ.P. 33 does not contain language parallel to C.R.C.P. 33(e); however, Fed.R.Civ.P. 33(a) caps the total number of interrogatories "including all discrete subparts" as does C.R.C.P. 33(a). Therefore, to ignore the "all discrete subparts" language of C.R.C.P. 33(a) would fail to give this language effect, in contravention of the Ad Hoc Committee's stated intent to retain a parallel to the federal rules.

Finally, to count each subpart—irrespective of whether it is a discrete subpart—toward the interrogatory limit would lead to the absurd result of unreasonably frustrating legitimate discovery.

Examples from this case provide illustrations of this problem. Several of Petitioners' interrogatories ask Respondents to provide specific information in describing an event. For instance, Petitioners' Interrogatory No. 12 asks Respondents to "[d]escribe the occasions on which [they] have diagnosed and/or treated individuals with cardiomyopathy, including [Respondents'] role in those cases and the circumstances and outcomes of those diagnoses and/or treatments." Respondents divided this request for a description into three questions: (1) the description; (2) Respondents' role in the cases; and (3) the circumstances or outcome of the diagnoses and/or treatments. If this interrogatory had asked for no more than a description, it would have been impossible for Respondents to split it into separate questions; however, because Petitioners followed their request for a description with requests that the description contain particular information, Respondents split it into multiple inquiries.

In addition, Petitioners' Interrogatory No. 19 asked Respondents to "[d]escribe any complaints, lawsuits, grievances, license suspension revocation proceedings, reprimands, or denials of certification instituted against [them], including the name of the complainant, the nature of the complaint, and its resolution." Respondents split this request for a description into four interrogatories: (1) the description; (2) the identity of the complainant; (3) the nature of the complaint; and (4) the resolution of the complaint. Again, the identity of the complainant and nature and resolution of the complaint are integral parts of the description itself.

Yet another of Petitioners' interrogatories (No. 14) asked Respondents to "[d]escribe any and all conversations [they] have had with any of [their] office colleagues or with any other health care provider regarding the

treatment of Karen Leaffer or her child's death, including the date that the conversation took place, the persons who were present during the conversations, and what was discussed." Respondents again split this question into four separate interrogatories: (1) the overall description; (2) the date of the conversations; (3) the persons present; and (4) the topic discussed.[7]

In all, Respondents split all but three of Petitioners' interrogatories into as many as twelve separate subparts. As these examples make clear, to parse out each of the requests for specific details of a particular event and require that they count as separate interrogatories would penalize a litigant for requesting information that the opposing party would already reasonably be expected to provide. Indeed, to do so would force parties to create general—perhaps even vague—open-ended interrogatories, leading to absurd results and frustrating the legitimate purpose of using interrogatories to ascertain specific facts. We emphasize that "[l]egitimate discovery efforts should not have to depend upon linguistic acrobatics." *Ginn v. Gemini Inc.,* 137 F.R.D. 320, 322 (D.Nev.1991).

Therefore, given the application of the above principles of statutory construction, we find the only reasonable construction of subsection (e) is that its reference to "[a]ny subpart" means "any discrete subpart."[8] *See Travelers Indem. Co. v. Barnes,* 191 Colo. 278, 283, 552 P.2d 300, 304 (1976) (adopting "[t]he reasonable construction" of an ambiguous statute).

Since we have determined that the more specific language in C.R.C.P. 33(a) prevails over the general language in C.R.C.P. 33(e), we must interpret the meaning of the "discrete subparts" language in C.R.C.P. 33(a) to determine whether Petitioners' non-pattern interrogatories contain "discrete subparts" or constitute a single interrogatory. Although this issue is a matter of first impression in Colorado, federal cases interpreting Fed. R.Civ.P. 33(a) provide helpful and highly persuasive guidance in interpreting our virtually identical C.R.C.P. 33(a).[9] *See, e.g., King v. People,* 785 P.2d 596, 601 (Colo.1990) ("Although we are not bound by federal precedent interpreting the Colorado counterpart of Fed.R.Evid. 803(4), the fact that CRE 803(4) is a mirror image of the federal rule prompts us to construe the Colorado rule in

---

**7.** In fact, many of Respondents' own interrogatories could have been similarly separated. For example, Respondents' Interrogatory No. 2 similarly addressed conversations regarding Ms. Leaffers' care and inquired: "For each and every visit you had with Dr. Zarlengo or Dr. Locke Offerdahl, please describe specifically who, if anyone was present; what you complained of or discussed; and what each doctor told you." Just as Respondents split Petitioners' question into four separate interrogatories, Respondents' own question could be similarly split into three separate queries: (1) the persons present for the visits; (2) the focus of the discussion; and (3) the doctors' responses. However, neither party split this question in this manner.

**8.** In fact, federal courts interpreting local rules that do not contain the "discrete subparts" language—and thus do not have the same conflict as C.R.C.P. 33—still have refused to necessarily count each subpart toward the interrogatory limit; instead, they have counted a subpart as part of a single question if a direct relationship exists between the specific information called for in the interrogatory. *See Clark v. Burlington N. R.R.,* 112 F.R.D. 117, 118 (N.D.Miss.1986) (interpreting local rule providing that "each subpart of a question shall be counted as a question," reasoning that the local rule was not "intended to frustrate legitimate discovery efforts," and con-

cluding that "an interrogatory is to be counted as but a single question ... even though it may call for an answer containing several separate bits of information, if there is a direct relationship between the various bits of information called for"); *see also Ginn,* 137 F.R.D. at 320, 322 (interpreting local rule limiting number of interrogatories to 40 "including subparts" and holding that "subparts are to be counted as part of but one interrogatory for the purposes of [the local rule] if they are logically or factually subsumed within and necessarily related to the primary question"). *But see Valdez v. Ford Motor Co.,* 134 F.R.D. 296, 297–98 (D.Nev.1991) (interpreting local rule limiting interrogatories to 40 "including subparts" and holding that rule requires that every part of an interrogatory be counted toward the limit).

**9.** Fed.R.Civ.P. 33(a) limits the number of interrogatories to "written interrogatories, not exceeding 25 in number, *including all discrete subparts."* Fed.R.Civ.P. 33(a) (emphasis added). C.R.C.P. 33(a) similarly limits the number of interrogatories to "written interrogatories, not exceeding the number, *including all discrete subparts,* set forth in the Case Management Order." C.R.C.P. 33(a) (emphasis added).

light of the text and purpose of the federal rule."); *Faris v. Rothenberg,* 648 P.2d 1089, 1091 n. 1 (Colo.1982) ("[F]ederal cases and authorities interpreting the [identical] federal rule are highly persuasive").

Noting that "the word 'discrete' essentially means, 'separate,' " *Kendall,* 174 F.R.D. at 685, federal courts interpreting Fed.R.Civ.P. 33(a) have made a distinction between discrete subparts and those subparts that are "logically or factually subsumed within and necessarily related to the primary question." *Kendall,* 174 F.R.D. at 685; *see also Nyfield,* 200 F.R.D. at 247; *Safeco,* 181 F.R.D. at 444–45. While discrete subparts are counted separately, subparts that are related to the primary question are not. *Nyfield,* 200 F.R.D. at 247; *Williams,* 192 F.R.D. at 701; *Safeco,* 181 F.R.D. at 444–45; *Kendall,* 174 F.R.D. at 685; *see also* 7 James Wm. Moore, *Moore's Federal Practice* § 33.30[2] (3d ed. 1997) ("The better view is that subparts may be counted as part of one interrogatory if they are logically and necessarily related to the primary question. This approach is most consistent with the intent of the discovery rules to provide information, not hide information, within reasonable limits.") (footnote omitted); 8A Charles Alan Wright, Arthur R. Miller, & Richard L. Marcus, *Federal Practice and Procedure* § 2168.1, at 261 (2d ed. 1994) ("[A]n interrogatory containing subparts directed at eliciting details concerning the common theme should be considered a single question, although the breadth of the area inquired about may be disputable.")

These courts rely, in part, on the advisory committee notes to the federal rule, which support their distinction between discrete and related subparts. According to the drafters of Fed.R.Civ.P. 33:

Each party is allowed to serve 25 interrogatories upon any other party, but must secure leave of court (or a stipulation from the opposing party) to serve a larger number. Parties cannot evade this presumptive limitation through the device of joining as "subparts" questions that seek information about discrete separate subjects. However, a question about communications of a particular type should be treated as a single interrogatory even though it re-quests that the time, place, persons present, and contents be stated separately for each such communication.

Fed.R.Civ.P. 33, advisory committee's note to 1993 amendment.

However, the challenge remains to distinguish between subparts that are discrete and those that are "logically or factually subsumed within and necessarily related to the primary question." Federal courts considering this question have adopted the following test:

Probably the best test of whether subsequent questions, within a single interrogatory, are subsumed and related, is to examine whether the first question is primary and subsequent questions are secondary to the primary question. Or, can the subsequent question stand alone? Is it independent of the first question? Genuine subparts should not be counted as separate interrogatories. However, discrete or separate questions should be counted as separate interrogatories, notwithstanding they are joined by a conjunctive word and may be related.

*Kendall,* 174 F.R.D. at 685; *see also Nyfield,* 200 F.R.D. at 247 (adopting *Kendall* test).

 Therefore, based on the conflict between C.R.C.P. 33(a) and C.R.C.P. 33(e) and the application of the above principles of statutory construction, we hold that only discrete subparts of non-pattern interrogatories—and not those logically or factually subsumed within and necessarily related to the primary question—count toward the limit stated in the Case Management Order. We further adopt the *Kendall* test to determine whether a subpart is discrete or whether it is logically or factually subsumed within and necessarily related to the primary question.

 We turn now to the ultimate issue presented by this case, namely whether the trial judge erred by failing to grant Petitioners' motion to compel answers to these non-pattern interrogatories. Applying the *Kendall* test we have today adopted, we determine that each of Petitioners' sixteen

non-pattern interrogatories constitutes a single question and does not contain discrete subparts.[10] Accordingly, we make the rule absolute.

10. Petitioners' non-pattern interrogatories are as follows:

*Interrogatory No. 11 (to the individual Defendants):* Describe your medical training specific to the conditions of cardiomyopathy, pre-eclampsia, and high risk pregnancies (particularly involving twin pregnancies and advanced maternal age).

*Interrogatory No. 12:* Describe the occasions on which you (including any physician employed by Defendant Midtown) have diagnosed and/or treated individuals with cardiomyopathy, including your role in those cases and the circumstances and outcomes of those diagnoses and/or treatments.

*Interrogatory No. 13:* State the approximate number of patients involving multiple birth and advanced maternal age, seen by each member of Midtown in 1996, 1997, and 1998.

*Interrogatory No. 14 (to the individual Defendants):* Describe any and all conversations you have had with any of your office colleagues or with any other health care provider regarding either treatment of Karen Leaffer or her child's death, including the date that the conversation took place, the persons who were present during the conversations, and what was discussed.

*Interrogatory No. 15:* Identify all consultations and phone conversations you had with either or both Plaintiffs in 1998, including the date that the conversation took place, the persons who were present during the conversations, and what was discussed.

*Interrogatory No. 16:* Describe in detail any investigation you have done regarding the care and treatment of Karen Leaffer, including any materials you have reviewed, any persons with whom you have spoken, or any other research you have performed since you treated Karen Leaffer; said description should include the name of any reference materials you have reviewed, computer queries and search results, the names of persons with whom you have spoken, and the results of any such investigation.

*Interrogatory No. 17:* Describe every step you took to assess and/or diagnose Karen Leaffer's condition in 1998.

*Interrogatory No. 18:* Since November 1998, identify each physician or other person with whom you have discussed Karen Leaffer's condition, including the nature of the discussions, where the discussion took place, whether the discussion was part of a formal meeting (i.e., rounds, medical meetings, internal review processes, etc.), and whether the discussion referred to her condition prior to November 1998, or thereafter.

*Interrogatory No. 19:* Describe any complaints, lawsuits, license suspension revocation proceedings, reprimands, or denials of certification instituted against you, including the name of the complainant, the nature of the complaint, and its resolution.

*Interrogatory No. 20:* Describe any complaints, lawsuits, or grievances instituted by you, including the date of the complaint, lawsuit, or grievance, the basis for the complaint, and its resolution.

*Interrogatory No. 21 (to Defendant Zarlengo):* State the total number (or best approximation) of patients you had in 1998, and the number of patients you saw each day from June 1, 1998 through November 19, 1998.

*Interrogatory No. 22 (to Defendant Zarlengo):* State the approximate number of hours you devoted to the following activities on a weekly basis for each month of 1998, beginning in June:

(a) office practice (e.g., seeing or speaking to patients)

(b) hospital practice (e.g., seeing or speaking to patients)

(c) administration of Midtown Obstetrics & Gynecology, P.C.

(d) professional association activities

(e) service as Secretary of Foundation Board of St. Joseph Hospital

(f) service as President of medical staff of St. Joseph

(g) consultation for CPEP

(h) service as director of Medwest Management Group

(i) service as director of Exempla Healthcare

(j) service on the United Healthcare Credentialing Committee

(k) service on the Colorado Foundation for Medical Care

(*l*) service on the Blue/Cross/Blue Shield [sic] Advisory Committee

*Interrogatory No. 23 (to Defendant Zarlengo):* Identify all documents, whether in your possession or otherwise, reflecting the time devoted to the activities set forth in the preceding interrogatory.

*Interrogatory No. 24:* Identify all medical journals, periodicals or similar publications you received during 1998, and, for the individual Defendants, state the approximate amount of time each month devoted to review of same.

*Interrogatory No. 25:* Identify the number of employees for Midtown as of June 1, 1998, and identify how many of those employees remained with Midtown as of the end of November 1998, and how many new employees had been hired in the interim.

*Interrogatory No. 26:* Describe in detail all efforts made to locate Ms. Leaffer's records in response to her request of December 14, 1998, and any subsequent requests.

## IV. ANALYSIS OF MOTION TO COMPEL PRODUCTION OF CALENDAR

Respondents split all but three of these sixteen non-pattern interrogatories into sixty separate questions and advised Petitioners to choose 20 of the 60 for Respondents to answer.

The next issue we consider is whether the trial court abused its discretion by denying Petitioners' motion to compel production of Dr. Zarlengo's appointment calendar. We conclude that it did.

■ Respondents argued to the trial court that Dr. Zarlengo's schedule, as evidenced by his appointment book, is not relevant to the issue of whether Respondents were negligent in their failure to diagnose Ms. Leaffer's cardiomyopathy prior to her congestive heart failure and not reasonably calculated to lead to the discovery of admissible evidence. As Petitioners admit, Ms. Leaffer was not diagnosed with congestive heart failure until after her last appointment with Dr. Zarlengo. Therefore, Respondents argued that because "it is impossible to diagnose cardiomyopathy prior to congestive heart failure" and because there is no factual issue about when Ms. Leaffer presented with congestive heart failure, Dr. Zarlengo's schedule before that date is both irrelevant and not reasonably calculated to lead to the discovery of admissible evidence.[11]

C.R.C.P. 26(b)(1) provides that "parties may obtain discovery regarding any matter, not privileged, which is relevant to the subject matter involved in the pending action, whether it relates to the claim or defense of the party seeking discovery or to the claim or defense of any other party." Further, it states that "[t]he information sought need not be admissible at the trial if the information sought appears reasonably calculated to lead to the discovery of admissible evidence." C.R.C.P. 26(b)(1).

■ Accordingly, the scope of discovery is "very broad," and the information sought "need only be relevant to the subject matter" of the litigation. *Kerwin v. Dist. Court,* 649 P.2d 1086, 1088 (Colo.1982). Moreover, the information need not be admissible at trial to be discoverable as long as it is reasonably calculated to lead to admissible evidence. *Id.* Given the discovery rules' "purpose of adequately informing the litigants of the facts giving rise to a claim or defense," we have interpreted the rules liberally, *Smith v. Dist. Court,* 797 P.2d 1244, 1248 (Colo.1990), and "in close cases, the balance must be struck in favor of allowing discovery." *Id.*

■ In this case, the trial court abused its discretion by apparently[12] assessing the discoverability of the appointment calendar based only on Respondents' argument and disregarding the allegations in Petitioners' complaint that Respondents failed to provide Ms. Leaffer with "proper continuity of care."[13] The trial court not only ignored our emphatic holding that "the standard of relevance for purposes of discovery under C.R.C.P. 26(b)(1) is not equivalent to the standard for admissibility of evidence at trial," *Williams v. Dist. Court,* 866 P.2d 908, 911 (Colo.1993), its order directly contravenes the clear language of C.R.C.P. 26(b)(1), which provides that parties may obtain discovery regarding any unprivileged, relevant matter that "relates to the claim or defense of the party seeking discovery or to the claim or defense of any other party" if it is "reasonably calculated to lead to the discovery of admissible evidence."[14]

11. Alternatively, Respondents argued that even if the calendar is relevant, it should be excluded because its probative value is substantially outweighed by the danger of unfair prejudice, confusion of issues, and a waste of the court's time under CRE 403 because Petitioners seek to portray Dr. Zarlengo as a "careless physician" who is "too busy" to care for his patients. However, CRE 403 has no bearing on the discoverability of evidence under the broad standard set forth in C.R.C.P. 26(b)(1). C.R.C.P. 26(b)(1) specifically provides that the information sought need not be admissible at trial if it "appears reasonably calculated to lead to the discovery of admissible evidence." C.R.C.P. 26(b)(1); *see also,* Sheila K. Hyatt & Stephen A. Hess, *Colorado Civil Rules Annotated,* 386 (3d ed. 1998) ("[D]iscovery is

not bound up in the evidentiary rules applicable at trial....").

12. The trial court's order summarily denied Petitioners' motion. Therefore, we must assume that it accepted Respondents' argument.

13. In their complaint, Petitioners included specific allegations of occasions when Dr. Zarlengo was not present for scheduled appointments or when Petitioners or others expressed concern about Dr. Zarlengo's unavailability. Petitioner's claim of lack of continuity of care was one of several allegations of acts of professional negligence.

14. We recognize that "relevancy is not the end of the inquiry," *Williams,* 866 P.2d at 912, and that

Petitioners' request to produce Dr. Zarlengo's appointment calendar relates to their claim that Dr. Zarlengo failed to give Ms. Leaffer proper attention, which they claim ultimately contributed to Respondents' negligence in failing to timely diagnose Ms. Leaffer's heart condition and to her baby's premature birth and eventual death. Thus, the information Petitioners expect to garner from the appointment calendar—whether Dr. Zarlengo had competing obligations during the period of time Ms. Leaffer was under his care that distracted him from rendering satisfactory care to her—is both relevant and related to "the claim . . . of the party seeking discovery."

The trial court's order ignores the relevance of the appointment book to Petitioners' claim, seemingly focusing instead solely on Respondents' theory that they could not have been negligent as alleged since Ms. Leaffer did not present with congestive heart failure until after her last appointment with Dr. Zarlengo. Thus, the order disregards the focus of Petitioners' claim that but for Respondents' negligence, they would have diagnosed Ms. Leaffer's cardiomyopathy earlier and taken steps to treat her and prevent congestive heart failure, thereby prolonging her pregnancy. For these reasons, we hold that the trial court abused its discretion by denying Petitioners' motion to compel Respondents to produce Dr. Zarlengo's appointment books with only patient names—other than Ms. Leaffer's name—redacted.

C.R.C.P. 26(c) allows the trial court to issue protective orders as justice requires "to protect a

## V. CONCLUSION

In summary, we hold that pursuant to C.R.C.P. 33, only discrete subparts of non-pattern interrogatories and not those logically or factually subsumed within and necessarily related to the primary question—must be counted toward the interrogatory limit set forth in the Case Management Order. We also adopt the *Kendall* test to distinguish between discrete subparts and those that are logically or factually subsumed within and necessarily related to the primary question. Applying the *Kendall* test to the non-pattern interrogatories at issue, we hold that none contain discrete subparts; therefore, each interrogatory counts as one question. Finally, we hold that the trial court abused its discretion by denying Petitioners' motion to compel Respondents to produce Dr. Zarlengo's appointment calendar. The rule is made absolute and the trial court is directed to grant Petitioners' motion to compel Respondents to respond to interrogatories and to produce Dr. Zarlengo's appointment calendar.

party . . . from annoyance, embarrassment, oppression, or undue burden or expense."